# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BLOCKCHAIN TECHNOLOGIES CORPORATION,

Plaintiff,

-against-

RVH INC. and ROBERT HERSKOWITZ,

Defendants.

Index No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff BlockChain Technologies Corp. ("BTC"), by and through its attorneys, as and for its Complaint against Defendants RVH Inc. ("RVH") and Robert Herskowitz ("Herskowitz," together with RVH, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      BTC sues RVH and Herskowitz for RVH's breach of contract and declaratory relief arising from the failure to fund a $250,000 loan to BTC (the "Loan"). The Loan is evidenced by a 12% convertible promissory note issued to RVH (the "Note") and a security agreement pledging BTC's assets as collateral for the Loan (the "Security Agreement"). The Loan, and RVH's obligation to fund it, also are evidenced in the Amended and Restated Purchase of Shares and Shareholder Agreement of Blockchain Technologies Corporation (the "Shareholder Agreement") among BTC, Herskowitz, the owner of RVH, and Nikolaos Spanos ("Spanos"), the President and majority shareholder of BTC. Copies of the Note, the Security Agreement and the Shareholder Agreement are annexed hereto as Exhibits A, B and C, respectively.

2.      Despite the fact that RVH failed fully to fund the Loan, thus breaching its obligations under the Note and the Security Agreement, RVH and Herskowitz have

disingenuously alleged an Event of Default under the Note, ignored BTC's demands for a payoff letter, ignored BTC's attempts to return the amounts RVH advanced under the Loan (less than 50% of the total amount RVH was obligated to advance under the Loan), and are illegally attempting to schedule a public sale of BTC's assets pursuant to the Security Agreement and N.Y. U.C.C. § 9-610. A copy of a letter from RVH announcing a default (the "Purported Default Letter") and noticing a public sale is annexed hereto as <u>Exhibit D</u>.

3. BTC requires declaratory relief setting forth the rights of the Parties under the Note, the Shareholder Agreement and the Security Agreement, and granting rescission, voiding the Note, the Shareholder Agreement and the Security Agreement. BTC has previously attempted, and intends, to return any monies RVH advanced to it and demands that Herskowitz return the shares BTC issued to him.

## **<u>PARTIES</u>**

4. At all relevant times, BTC was and is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 157 Prince Street, New York, New York 10012.

5. At all relevant times, RVH was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at P.O. Box 403303, Miami Beach, Florida 33140.

6. At all relevant times, Herskowitz was and is an individual residing in the State of Florida, at 4345 North Jefferson Avenue, Miami Beach, Florida 33140.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this action is between citizens of different states.

8.      Personal jurisdiction can be asserted over Defendants, *inter alia*, because the terms of the Note, the Security Agreement and the Shareholder Agreement provide that each of the parties thereto consents to the jurisdiction of the federal courts in the State of New York.

9.      Venue is proper in this District under 28 U.S.C. § 1391 pursuant to the terms of the Note, the Security Agreement and the Shareholder Agreement, each of which contains a venue provision by which the Parties agreed that any action BTC brought arising out of those agreements would be brought in the federal courts located in the City of New York.

10.      The Note, the Security Agreement and the Shareholder Agreement are governed by New York law.

## FACTUAL BACKGROUND

A.      **BTC Is Introduced to Herskowitz**

11.      In or around late 2014, Spanos was introduced to John Matthews ("Matthews"), President of Global Arena Holding, Inc. ("Global"), who expressed interest in Global acquiring BTC through a reverse merger.

12.      Under the contemplated transaction, Global would invest approximately $1,000,000 in BTC, Spanos would receive stock in Global, BTC would become a subsidiary of Global and Spanos would continue to control BTC.

13.      In the course of discussions regarding the contemplated reverse merger, Matthews introduced Spanos to Herskowitz.   In order to address liquidity issues pending the reverse merger,

Herskowitz agreed that RVH would make the Loan (characterized as a short-term bridge loan) to BTC.

14.     RVH made the Loan in exchange for Herskowitz receiving equity in BTC and RVH receiving a first security interest in BTC assets until the Loan was paid off.

15.     As a part of BTC's agreement to accept the bridge loan, Herskowitz and Matthews, on behalf of Global, promised and represented that Global would pay off the Loan on BTC's behalf and Herskowitz would exchange his BTC shares for shares in Global upon consummation of the transaction between BTC and Global, which purportedly would occur within weeks.

16.     Upon information and belief, Matthews and Global never intended to pay off the Loan or to facilitate the exchange of Herskowitz's BTC shares for Global shares, and purposely acted to deceive Spanos.

17.     Upon information and belief, Herskowitz was aware that Matthews and Global never intended to pay off the Loan or to facilitate the exchange of Herskowitz's BTC shares for Global shares, and purposely acted to deceive Spanos.

**B.     BTC Enters Into the Loan and the Note with RVH**

18.     On February 24, 2015, RVH, as lender, and BTC, as borrower, entered into the Loan.

19.     On the same day, BTC issued the Note to RVH, evidencing the Loan.

20.     Pursuant to the Note, BTC agreed to pay to RVH (or its designees) on or before August 23, 2015 (the "Maturity Date") the principal sum of $250,000 or, if less, the aggregate unpaid principal amount outstanding upon the Maturity Date (the "Principal Amount") and all accrued interest and fees.

21.     The interest rate was set at 12% per annum, compounded daily from the date of the

Note until the Principal Amount was repaid in full.

22. The default interest rate was set at 24% per annum.

23. Section 1.02(B) of the Note stated that "[a]t the Closing and thereafter the holder shall make the loan payments on the Note in installments up to the total consideration of Two Hundred Fifty Thousand ($250,000.00) Dollars" (the "Note Proceeds").

24. Section 1.05 of the Note recognized that "[a]s security for the prompt and complete payment and performance when due of all the obligations set forth in this Note," BTC granted a first priority lien and continuing security interest in BTC's assets.

25. Section 1.07 of the Note provided RVH with the right to convert the Principal Amount due, plus interest, to additional equity in BTC, stating, "in its sole and absolute discretion, at any time to convert all or any part of the entire outstanding Principal Amount of this Note, plus all accrued interest thereon, based upon a Company valuation of Two Million Five Hundred Thousand dollars . . . on a fully-diluted basis."

26. The Note incorporated by reference the terms of the Security Agreement, which described in detail the assets pledged.

**C.    BTC Enters Into the Shareholder Agreement with Herskowitz**

27. On February 24, 2015, BTC, Spanos and Herskowitz entered into the Shareholder Agreement.

28. Pursuant to the Shareholder Agreement, for $2,000 – a nominal amount of consideration – Herskowitz received twenty (20) shares of BTC, which amounted to 20% of all then-issued equity in BTC.

29. BTC agreed to give Herskowitz the equity in BTC only in consideration of RVH's agreement to loan $250,000 to BTC.

30.     The fact that the equity was provided in consideration of the Loan is reflected in the recitals of the Shareholder Agreement, which state: "the Corporation receives a bridge Loan from [RVH] . . . in the amount of Two Hundred Fifty Thousand ($250,000.00) Dollars and issues to [RVH] a promissory note for said amount . . . and a first security interest pursuant to a security agreement for the benefit of [RVH] in all the Corporation's assets."

31.     Section 8(ii) of the Shareholder Agreement recognized the contemplated reverse merger with Global and the fact that the Loan agreement was in contemplation of that transaction: "[T]he Corporation shall make a reverse merger with [Global], [Herskowitz] will sell the RH Shares on terms and conditions agreed between RH and Global; provided at that time the note shall be fully paid and the restrictions set forth in Section 4A and are thereby released and no longer in effect."

**D.     RVH Defaults on the Note by Failing to Make All Requested Installment Payments on the Loan**

32.     Despite Matthews' assurances that the Global transaction would be consummated within "weeks" of the Loan execution, Global never executed a reverse merger with BTC, leaving BTC without the financing Global had promised.

33.     RVH and Herskowitz only provided BTC with $110,000 in installment payments, less than half of the Note Proceeds, despite multiple demands by BTC, in accordance with section 1.02(D) of the Note, for the additional promised payments.

34.     Indeed, when Herskowitz first presented a check in the sum of $110,000, it was returned for insufficient funds.   Herskowitz, after some delay, presented a new check in the same amount.

35.     RVH's failure to make further installment payments under the Loan constituted an Event of Default and a breach of contract under section 4.01(C) of the Note.

36.     As a result of RVH's breach of the Note and failure to fulfill its obligations under the Loan, BTC lost the financing it needed to expand its business and capitalize on the rapid growth of cryptocurrency in global markets.

37.     Upon information and belief, RVH knew that by failing to fund the Loan, BTC would lose opportunities to grow and expand its business and technology.

38.     RVH's breach of the Note voided RVH's security interest in BTC's assets pursuant to section 1.05 of the Note because RVH failed to provide "prompt and complete payment and performance when due of all obligations" under the Note.

39.     RVH's breach of the Note also voided its share conversion rights under section 1.07 of the Note and Herskowitz's right to the 20 BTC shares he received pursuant to the Shareholder Agreement.

**E.     RVH Refuses to Provide a Payoff Letter and Improperly Notices a Sale of BTC Assets**

40.     On February 10, 2018, BTC's counsel wrote to Herskowitz seeking (i) a payoff letter for the $110,000 advanced by RVC to BTC and (ii) any BTC stock held by Herskowitz.

41.     Herskowitz refused to provide either a payoff letter or the BTC stock he held.

42.     BTC's counsel made the same request on March 7, 2018, and again on May 24, 2018, but RVH and Herskowitz also ignored these requests.

43.     As a result, BTC could not pay RVH the amounts advanced on the Loan.

44.     On July 18, 2018, BTC received the Purported Default Letter, in which RVH erroneously contended that BTC had defaulted under the Loan.

45.     The Purported Default Letter alleged, *inter alia*, that (i) BTC "has not paid the $300,000 of Principal due on or before February 28, 2018," (ii) BTC had not paid any interest due from September 1, 2017, forward, (iii) BTC "has not paid the Principal, Interest and Facility Fee

due on the Maturity Date March 1, 2018," (iv) BTC "has not made any payments from the date of the loan," and (v) referenced "other defaults."

46.     Attached to the Purported Default Letter was a "notice" announcing a public sale of BTC's assets, pursuant to the Security Agreement, to be held on August 9, 2018, at the law offices of Eilenberg & Krause LLP.

47.     On August 7, 2018, BTC's counsel notified RVH, Herskowitz, Global and Eilenberg & Krause LLP that the Purported Default Letter and "notice" of sale were each defective for a variety of reasons, including the fact that RVH did not have a security interest in BTC's assets as a result of its failure to fulfill its obligations to loan BTC $250,000.

48.     BTC's counsel confirmed that BTC required an accounting of BTC's financial obligation in order to repay the amount due on the Loan.

49.     BTC representatives went to the law offices of Eilenberg & Krause LLP on August 9, 2018, and witnessed no public sale of BTC's assets.

50.     RVH has not sold BTC's assets.

51.     Since this letter exchange, RVH has continued to refuse to give BTC the payoff letter it seeks.

## FIRST CAUSE OF ACTION
### (Breach of the Note against RVH)

52.     BTC repeats and re-alleges each of the foregoing allegations in paragraphs 1- 51, as if fully set forth herein.

53.     The Note constitutes a valid, enforceable contract.

54.     BTC performed all of the obligations required under the Note.

55.     RVH defaulted on the Note by its failure to pay the full amount due to BTC under the Loan before the Maturity Date, which failure constituted an Event of Default under section 4.01(C) of the Note.

56.     RVH's default under the Note is continuing.

57.     As a direct and proximate result of RVH's default under the Note, RVH has committed a breach of contract and, as a result of lost business opportunities and ability to grow, BTC has been damaged in an amount to be determined at trial, but reasonably believed to be $10,000,000.

## SECOND CAUSE OF ACTION
(Declaratory Judgment against Defendants)

58.     BTC repeats and re-alleges each of the foregoing allegations 1- 57, as if fully set forth herein.

59.     A justiciable controversy exists as to whether RVH's failure fully to fund the Loan breached the Shareholder Agreement and requires Herskowitz to return the 20 BTC shares he received in consideration for RVH's agreement fully to fund the Loan.

60.     A justiciable controversy exists as to whether RVH's security interest in BTC's assets is void as a result of RVH's failure fully to fund the Loan.

61.     A justiciable controversy exists as to whether RVH should issue a payoff letter upon BTC's demand.

62.     A justiciable controversy exists as to whether RVH's failure fully to fund the Loan voided its share conversion rights under section 1.07 of the Note.

63.     As a consequence of the foregoing, BTC's equity is being held hostage by Herskowitz and BTC's assets, including its intellectual property, are threatened by a public sale.

64.     BTC has no adequate remedy at law.

65.     By reason of the foregoing, BTC is entitled to rescission of the Note, the Security Agreement and the Shareholder Agreement and a declaration that: (1) Herskowitz must return the BTC shares he received and holds; (2) RVH's purported security interest in BTC's assets is void; (3) RVH is obligated to issue a payoff letter to BTC for the outstanding balance, plus interest, on the Loan; and, (4) RVH's share conversion rights under section 1.07 of the Note are void.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, BTC demands a trial by jury trial of all claims so triable asserted in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, BTC demands judgment against RVH and Herskowitz, as follows:

A.      on the First Cause of Action, granting BTC damages against RVH in an amount to be determined a trial but in no event less than $10,000,000, plus continuing post-judgment interest at the statutory rate, for breach of the Note;

B.      on the Second Cause of Action, granting BTC rescission on the Note, the Security Agreement and the Shareholder Agreement, and, as a result, a declaration as follows:

(1)      Herskowitz must return the BTC shares he holds;

(2)      RVH's purported security interest in BTC's assets is void;

(3)      RVH is obligated to issue a payoff letter to BTC for the outstanding balance, plus interest, on the Loan; and,

(4)      RVH's share conversion rights under section 1.07 of the Note are void;

C.      the costs and disbursements of the action, including reasonable attorney's fees incurred in bringing this action; and

D.     granting BTC such other and further relief as the Court deems just and proper.

Dated:  New York, New York          ROBINSON BROG LEINWAND
        October 12, 2018            GREENEGENOVESE & GLUCK P.C.

                                    By:  /s/ Nicholas M. Menasché
                                         Peter R. Ginsberg
                                         Nicholas M. Menasché

                                    875 Third Avenue, 9th Floor
                                    New York, New York 10022
                                    Tel:   (212) 603-6300

                                    *Attorneys for BlockChain Technologies Corp.*