# EXHIBIT A

# BLOCKCHAIN TECHNOLOGIES CORPORATION

## 12% Secured Convertible Promissory Note
## Due August 23, 2015

$250,000                                                              February 24, 2015

**THIS SECURED CONVERTIBLE PROMISSORY NOTE** (the "Note") is issued by BlockChain Technologies Corporation, a New York corporation whose principal office is located at 55 Wall Street, Suite 708, New York City, New York 10005 (hereinafter referred to as the "Company"), to the order of RVH Inc. (together with its permitted successors and assigns, the "Holder").

## ARTICLE I

**Section 1.01  Principal and Interest.**

A.     For value received, the Company hereby promises to pay on or before the Maturity Date (as defined below) to the order of the Holder or its designees, in lawful money of the United States of America and in immediately available funds, the principal sum of Two Hundred Fifty thousand dollars ($250,000), or, if less, the aggregate unpaid principal amount outstanding (the "Principal Amount") and all accrued interest thereon and the fees set forth herein.

B.     Interest shall accrue on the Principal Amount at the rate of twelve percent (12%) per annum, compounded daily (computed on the basis of a 360-day year and the actual days elapsed) from the date hereof until the Principal Amount is repaid in full. Accrued interest on the Principal Amount shall be due and payable in arrears on the first business day of each month and at such other times as may be specified herein. Interest hereunder shall be due and payable in accordance with the terms hereof before and after judgment, and before and after the commencement of any proceeding under the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of the United States or other applicable jurisdictions from time to time in effect and affecting the rights and creditors generally. In no event shall the amount of interest due or payable hereunder exceed the maximum rate of interest allowed by applicable law, and in the event any such payment is inadvertently paid by the Company or inadvertently received by the Holder, then such excess sum shall be credited as payment of the Principal Amount.

**Section 1.02  The Closing, the Making of the Loan and Issuance of the Note and the Security Agreement and the use of the Note Proceeds.**

A. The closing (the "Closing") shall take place at the offices of Global Arena, located at 1500 Broadway – 5th Floor, NY, NY, on February 24, 2015, at 2:00 p.m., or at such other place and time as the Holder shall decide.

B. At the Closing and thereafter the Holder shall make the loan payments on the Note in installments up to the total consideration of Two Hundred Fifty Thousand ($250,000.00) Dollars (the "Note Proceeds") to be used by the Company as set forth in Section 1.02D by payment by its corporate check or by wire, as the Company shall instruct pursuant to the budget attached hereto (the "Budget").

C. At the Closing the Company shall execute and Deliver this Note and the Security Agreement.

D. Following the Closing of the Note, the Note Proceeds shall be deposited in a separate savings account as follows: Before the end of business on the twenty fifth (25th) day of every month, the Company shall have advised the Holder of the total amount the Company shall need during the subsequent month (subject to 1.02 E(i) and (ii) below) and the Holder shall on or before the end of six (6) business days thereafter pay the so available Note Proceeds for the subsequent month into the Company's savings account until the earlier of when the Holder has met its payment obligation (The "Payment Obligation") as follows:

(i) The Note Proceeds paid up to the time until the Company has raised not less than Three Hundred Sixty Thousand ($360,000.00) Dollars in equity or debt or exchangeable or exercisable for debt or equity in one or more transactions; or

(ii) The full amount of the Note Proceeds of Two Hundred Fifty Thousand ($250,000.00) Dollars.

E. The Note Proceeds may only be used by the Company for expenses incurred until the Note is repaid in full as follows:

(i) pursuant to the budget attached hereto as Exhibit B as from time to time amended by a mutual consent by RH and NS in writing (the "Budget");

(ii) Otherwise, as specifically approved by RH in writing.

**Section 1.03  Maturity Date.** The Principal Amount and all accrued interest thereon shall be due and payable in full upon the earlier of (i) the Company's receipt, in one or more transactions, gross proceeds of Three Hundred and Sixty Thousand ($360,000.00) Dollars in debt or equity, or securities convertible into or exchangeable or exercisable for debt or equity or (ii) August 23, 2015 (the "Maturity Date"). Notwithstanding anything to the contrary in the event the Company does not receive on or before May 23, 2015 in one or more transactions, gross proceeds of $350,000 in debt or equity, or securities convertible into or exchangeable or exercisable for debt or equity, the Company may with the payment of a 1% nonrefundable extension fee paid to the Holder prior to May 21, 2015 extend the Note for an additional 90 days until the earlier of (i) above or (ii) November 23, 2015.

**Section 1.04   Payments to the Holder.** The Company agrees that the Principal Amount and accrued interest thereon and any other amounts paid by the Company to the Holder shall be paid by wire transfer to the Holder unless instructed by the Holder otherwise, or upon written request by the Holder, by wire transfer to any or all of its assigns or participants, if any. The Company acknowledges that the Holder intends to include other participants in this Note.

**Section 1.05   Security Interest.** As security for the prompt and complete payment and performance when due of all the obligations set forth in this Note or in any future notes, the Company hereby grants to the Holder a first priority lien on and continuing security interest in all of the Company's right, title and interest in, all its assets now or hereafter acquired, together with the proceeds thereof, including without limitation any *subsidiaries* or other interests owned by the Company in any other entities; the terms and conditions of such security interest as set forth in the security agreement executed and delivered to the Holder simultaneously herewith a copy of which is attached hereto as Exhibit "A" (the "Security Agreement").

**Section 1.06   Seniority; Automatic Stay.** In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company, or if any of the "Pledged Collateral" (as defined in the Security Agreement) should become the subject of any bankruptcy or insolvency proceeding, then this Note shall be entitled to a claim in liquidation before participation by the holders of any "Debt" (as defined below) or of any equity interests of the Company and any administrative claims that may exist at that time. The amount of the claim in liquidation shall equal the amount to which the Holder would be entitled in the case of payment. "Debt" shall mean (i) all obligations of the Company for borrowed money, (ii) all obligations of the Company evidenced by bonds, debentures, notes, or other similar instruments, (iii) all obligations of the Company to its employees (unless otherwise provided by law), agents, accountants, counsel and other third parties, (iv) all obligations of the Company to pay the deferred purchase price of property or services, (v) all obligations of the Company as lessee under capitalized leases, (vi) all debt or obligations of others secured by a lien on any asset of the Company (vii) all debt or obligations of others guaranteed by the Company and (viii) any other debt or liabilities, including without limitation, any monies owed to federal, state or local taxing authorities (unless otherwise provided by law). The Company acknowledges and agrees that should a proceeding under any bankruptcy or insolvency law be commenced by or against the Company, or if any of the Pledged Collateral (as defined in the Security Agreement) should become the subject of any bankruptcy or insolvency proceeding, then the Holder should be entitled to, among other relief to which the Holder may be entitled under this Note and/or applicable law, an order from the court granting immediate relief from the automatic stay pursuant to 11 U.S.C. Section 362 to permit the Holder to exercise all of its rights and remedies pursuant to this Note and/or applicable law. TO THE EXTENT PERMITTED BY LAW, THE COMPANY EXPRESSLY WAIVES THE BENEFIT OF THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. SECTION 362. FURTHERMORE, THE COMPANY EXPRESSLY ACKNOWLEDGES AND AGREES THAT NEITHER 11 U.S.C. SECTION 362 NOR ANY OTHER SECTION OF THE BANKRUPTCY CODE OR OTHER STATUTE OR RULE (INCLUDING, WITHOUT LIMITATION, 11 U.S.C. SECTION 105) SHALL STAY, INTERDICT, CONDITION, REDUCE OR INHIBIT IN ANY WAY THE ABILITY OF THE HOLDER TO ENFORCE ANY OF ITS RIGHTS AND REMEDIES UNDER THIS NOTE AND/OR APPLICABLE LAW. The Company hereby consents to any motion for relief from stay that may be filed by the

Holder in any bankruptcy or insolvency proceeding initiated by or against the Company and, further, agrees not to file any opposition to any motion for relief from stay filed by the Holder. The Company represents, acknowledges and agrees that this provision is a specific and material aspect of this Note, and that the Holder would not agree to the terms of this Note if this waiver were not a part of this Note. The Company further represents, acknowledges and agrees that this waiver is knowingly, intelligently and voluntarily made, that neither the Holder nor any person acting on behalf of the Holder has made any representations to induce this waiver, that the Company has been represented in the signing of this Note and the Security Agreement and in the making of this waiver by independent legal counsel selected by the Company and that the Company has discussed this waiver with counsel.

**Section 1.07   Conversion Right.** The Holder shall have the right, in its sole and absolute discretion, at any time to convert all or any part of the entire outstanding Principal Amount of this Note, plus all accrued interest thereon, based upon a Company valuation of Two Million Five Hundred Thousand dollars ($2,500,000) on a fully-diluted basis. The Company agrees that it has no right to prevent the Holder from effecting such conversion, whether by attempting to prepay this Note (whether or not there shall have been a default hereunder) or otherwise. If the Holder opts to convert all or any portion of the Principal Amount and accrued and unpaid interest hereunder and the Facility Fee as aforesaid, the Company shall issue and deliver to such Holder, a certificate or certificates for the interests to which the Holder shall be entitled within 5 business days of the Holder exercising its right hereunder.

**Section 1.08   MFN Right.** If, at any time after the date hereof until all obligations of this Note are satisfied in full, the Company issues any securities, the terms of which could reasonably be deemed to have terms and conditions more favorable than the terms and conditions of this Note and any other securities issued in connection herewith (each such transaction, a "New Issuance"), then the Holder shall have the right, at its option, to either (i) exchange (any such exchange being an "MFN Exchange") all or any part of the Note owned by the Holder or the other securities issued to the Holder in connection herewith for any of the securities or any of the rights or terms connected or attached therein offered in the New Issuance on the same term and/or condition offered in the New Issuance and/or (ii) reduce the conversion price of this Note or the other securities issued to the Holder to the price of the New Issuance. For purposes of clarification, if the New Issuance consists of a note or term with a more favorable conversion rate or term but a longer maturity date than that provided for in this Note, the Holder has the right to elect an MFN Exchange with respect to the conversion rate offered in the New Issuance without electing the maturity date. The Company covenants and agrees to promptly give written notice (an "MFN Notice") to the Holder of the terms and conditions of any such New Issuance. On or prior to the expiration of the 20 business day period (the "MFN Review Period") after the Holder has received the MFN Notice, the Holder shall notify the Company in writing (the "MFN Response") specifying whether it elects to conduct an MFN Exchange with respect to any portion or term of this Note and/or any other securities issued in connection herewith. For purposes of clarification, the Holder shall have the right to treat any or all of the outstanding obligations pursuant to this Note as it desires; it can elect one or any portion of the characteristic of the New Issuance against one or any portion of the characteristic of this Note.

## ARTICLE II

**Section 2.01   Representations and Warranties of the Holder.** The Holder hereby acknowledges, represents and warrants to, and agrees with, the Company as follows:

(a) The Holder understands that this Note has not been registered under the Securities Act of 1933, as amended (the "Act") or registered or qualified under any the securities laws of any state or other jurisdiction, and is a "restricted security".

(b) The Holder has full power and authority to enter into this Note, the execution and delivery of this Note has been duly authorized, and this Note constitutes a valid and legally binding obligation of the Holder.

(c) The Holder is not subscribing for this Note as a result of or subsequent to any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over television or radio, or presented at any seminar or meeting, or any solicitation of a subscription by person previously not known to the Holder in connection with investment.

(d) The Holder is (i) experienced in making investments of the kind and (ii) able, by reason of the business and financial experience of its officers (if an entity) and professional advisors (who are not affiliated with or compensated in any way by the Company or selling agents), to protect its own interests in connection with the transactions described in this Note and the related documents.

## ARTICLE III

**Section 3.01   Representations and Warranties of the Company.** The Company hereby acknowledges, represents and warrants to, and agrees with, the Holder as follows:

(a) The Company is a corporation duly organized, validly existing, and in good standing under the laws of the State of New York. The Company has all requisite power to own, operate and lease its business and assets and carry on its business as the same is now being conducted.

(b) The Company has all requisite power and authority to enter into and deliver this Note and to consummate the transactions contemplated hereby. The execution, delivery, and performance of this Note by the Company and the consummation of the transactions contemplated hereby, have been duly authorized by all necessary action and no other action or proceeding on the part of the Company is necessary to authorize the execution, delivery, and performance by the Company of this Note and the consummation by the Company of the transactions contemplated hereby and thereby.

(c) Other than as set forth in the Amended and Restated Shareholder Agreement dated as of the date hereof, there are no outstanding agreements or preemptive or similar rights affecting the Company's equity and no outstanding rights, warrants or options to acquire, or instruments

convertible into or exchangeable for, or agreements or understandings with respect to the sale or issuance of any equity interests of the Company.

(d) No consent, approval, authorization or order of any court, governmental agency or body or arbitrator having jurisdiction over the Company is required for the execution by the Company of this Note and the Security Agreement and compliance and performance by the Company of its obligations hereunder and there under. This Note and the Security Agreement and the Company's performance of its obligations thereunder have been unanimously approved by the Company's board and shareholders.

(e) Neither the issuance and sale of the Note nor the performance of the Company's obligations under this Note and all other agreements entered into by the Company relating thereto by the Company will:

(i) violate, conflict with, result in a breach of, or constitute a default (or an event which with the giving of notice or the lapse of time or both would be reasonably likely to constitute a default) under (A) any shareholder agreement of the Company, (B) any decree, judgment, order, law, treaty, rule, regulation or determination applicable to the Company of any court, governmental agency or body, or arbitrator having jurisdiction over the Company or over the properties or assets of the Company, (C) the terms of any bond, debenture, note or any other evidence of indebtedness, or any agreement, stock option or other similar plan, indenture, lease, mortgage, deed of trust or other instrument to which the Company is a party, by which the Company is bound, or to which any of the properties of the Company, or (D) the terms of any agreement to which the Company or any of its affiliates is a party; or

(ii) Result in the creation or imposition of any "Lien" (as defined below) upon the securities or any of the assets of the Company; or

(iii) result in the activation of any anti-dilution rights or a reset or repricing of any debt or security instrument of any other creditor or equity holder of the Company, nor result in the acceleration of the due date of any obligation of the Company or of any person or entity holding securities of the Company or having the right to receive securities of the Company.

(f) There is no pending or threatened action, suit, proceeding or investigation before any court, governmental agency or body, or arbitrator having jurisdiction over the Company.

(g) The Company has no liabilities or obligations, individually or in the aggregate, other than $_____.

(h) The interest due hereunder as well as all other costs and expenses due to the Holder, including without limitation the Facility Fee, shall not constitute usury under any applicable law. The Company represents, acknowledges and agrees that this representation is a specific and material aspect of this Note, and that the Holder would not agree to the terms of this Note if this representation were not a part of this Note. This representation is integral to the consummation of the transactions contemplated herein, without which the Holder would not enter into this transaction. The Company has discussed and verified with their legal counsel that the amount of

interest due or payable hereunder is not usurious and does not exceed the maximum rate of interest allowed by applicable law.

**Section 3.02   Covenants of the Company.** The Company hereby covenants and agrees with the Holder that, so long as any amount remains unpaid on this Note or the Security Agreement, the Company shall:

(a) Notify the Holder if there is a breach or threatened breach of any of the representations and warranties provided for in this Note and forward to the Holder any correspondence regarding any threatened or actual action, suit, proceeding or investigation before any court, governmental agency or body, or arbitrator having jurisdiction over the Company and each material development in respect thereof;

(b) Use the Note Proceeds as per Section 1.02 (the "Use of Funds") and not prepay or pay any Debt nor redeem any equity instruments of the Company;

(c) Promptly pay and discharge, or cause to be paid and discharged, when due and payable, all lawful taxes, assessments and governmental charges or levies imposed upon the income, profits, property or business of the Company;

(d) Not, directly or indirectly, create, incur, assume or suffer to exist any pledge, hypothecation, assignment, deposit arrangement, lien, charge, claim, security interest, security title, mortgage, security deed or deed of trust, easement or encumbrance, or preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including any lease or title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, and the filing of, or agreement to give, any financing statement perfecting a security interest under the Uniform Commercial Code or comparable law of any jurisdiction) (each, a "Lien") upon any of its assets, whether now owned or hereafter acquired except for: (A) Liens imposed by law for taxes that are not yet due or are being contested in good faith and for which adequate reserves have been established in accordance with generally accepted accounting principles; (B) carriers', warehousemen's, mechanics', material men's, repairmen's and other like Liens imposed by law, arising in the ordinary course of business and securing obligations that are not overdue by more than 30 days or that are being contested in good faith and by appropriate proceedings; and (C) Debt which shall be used to repay this Note and all other obligations owed to Holder in full;

(e) Not, directly or indirectly, repay, reclassify, redeem, repurchase or offer to repay, repurchase or otherwise acquire or make any dividend or distribution in respect of any of its equity securities;

(f) Not enter into any merger, consolidation, or exchange of assets or securities unless such transaction specifically provides that simultaneous with the closing thereof this Note shall be paid in full;

(g) Not, directly or indirectly, enter into any transaction with an officer, shareholder or director, of the Company or any affiliate thereof;

(h) Not directly or indirectly grant nor allow any security interest to be taken in the assets of the Company unless the lien is expressly subordinate to the lien granted to the Holder, nor incur or issue any debt, equity or other instrument; and

(i) Promptly after the Company shall obtain knowledge of the occurrence of any Event of Default (as defined in Section 4.01 below) or any event which with the notice or lapse of time or both would become an Event of Default, deliver to the Holder a notice specifying that such notice is a "Notice of Default" and describing such Default in reasonable detail, and in such Notice of Default or soon thereafter as practicable, a description of the action the Company has taken or proposes to take with respect thereto.

## ARTICLE IV

### Section 4.01   Events of Default.

**A.**      Upon the occurrence of any of the following events (each, an "Event of Default") (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body).

B.      An Event of Default shall be deemed to have occurred by the Company:

(a) Default in the payment of the Principal Amount and all accrued interest on the Maturity Date;

(b) Default in the payment, when due or declared due, of the Facility Fee or any other fees, costs or expenses owed or payable to Holder as provided herein or in any other note from the Company to the Holder, including without limitation, attorneys' fees and expenses;

(c) The Company shall: (1) make a general assignment for the benefit of its creditors, (2) apply for or consent to the appointment of a receiver, trustee, assignee, custodian, sequestrator, liquidator or similar official for itself or any of its assets and properties; (3) commence a voluntary case for relief as a debtor under the United States Bankruptcy Code; (4) file with or otherwise submit to any governmental authority any petition, answer or other document seeking: (A) reorganization, (B) an arrangement with creditors or (C) to take advantage of any other present or future applicable law respecting bankruptcy, reorganization, insolvency, readjustment of debts, relief of debtors, dissolution or liquidation; (5) file or otherwise submit any answer or other document admitting or failing to contest the material allegations of a petition or other document filed or otherwise submitted against it in any proceeding under any such applicable law, or (6) be adjudicated a bankrupt or insolvent by a court of competent jurisdiction;

(d) (A) any case, proceeding or other action shall be commenced against the Company and has not been resolved in a period of thirty (30) days after such commencement; for the purpose of effecting, or (B) an order, judgment or decree shall be entered by any court of competent jurisdiction approving (in whole or in part) anything specified herein, or (C) any

receiver, trustee, assignee, custodian, sequestrator, liquidator or other official shall be appointed with respect to the Company, or shall be appointed, to take or shall otherwise acquire, possession or control of all or a substantial part of the assets and properties of the Company, and any of the foregoing shall continue unstayed and in effect for any period of ten (10) days;

(e) failure on the part of Company to observe or perform any other covenant or agreement on the part of Company contained in this Note (other than those covered by the clauses above) or in any other agreement between the Company and its subsidiaries or affiliates and the Holder which is not remedied by the Company within 5 days of such failure;

(f) any representation, warranty or certification made by the Company to the Holder in this Note, the Security Agreement or in any other agreement between the Company and the Holder or its affiliates shall be false or misleading which is not remedied or corrected by the Company within 15 days of such an event;

(g) Any event or condition shall occur which shall result in a default under any material agreement between the Company and another person or entity;

(h) any event or condition shall occur which results in the acceleration of the maturity of any Debt or enables or, with the giving of notice or lapse of time or both, would enable the holder of such Debt or any person or entity acting on such holder's behalf to accelerate the maturity thereof;

(i) Any money judgment, writ or similar final process shall be entered or filed against Company or any of their property or other assets for more than $5,000.00, and shall remain unvacated, unbonded, unappealed, unsatisfied, or unstayed for a period of 10 days;

(j) A material adverse change in the Company's business or financial condition; or

(k) The failure to provide the Holder with any document requested by the Holder within 5 days from the date thereof.

(l) (A) any case, proceeding or other action shall be commenced against the Company and has not been resolved in a period of thirty (30) days after such commencement; for the purpose of effecting, or (B) an order, judgment or decree shall be entered by any court of competent jurisdiction approving (in whole or in part) anything specified herein, or (C) any receiver, trustee, assignee, custodian, sequestrator, liquidator or other official shall be appointed with respect to the Company, or shall be appointed, to take or shall otherwise acquire, possession or control of all or a substantial part of the assets and properties of the Company, and any of the foregoing shall continue unstayed and in effect for any period of ten (10) days;

(m) Default in the payment of any interest payments when due;

C.  An Event of Default and a breach of contract shall be deemed to have occurred by Holder, if The Holder shall fail to pay the Note Proceeds as agreed upon herein.

Page 9 of 16

**Section 4.02   Effect of Default by the Company.** Upon the occurrence of an Event of Default by the Company, the Principal Amount and all interest accrued thereon, the Facility Fee and any other obligations due to the Holder shall be immediately due and payable, and the Holder shall have the right to enforce its security interest pursuant to and in accordance with the terms and provisions of the Security Agreement. Following the occurrence and during the continuance of an Event of Default, the annual interest rate on this Note shall be the lower of the highest rate permitted by law or twenty-four percent (24%).

**Section 4.03   Powers and Remedies Cumulative; Delay or Omission Not Waiver of Default.** No right or remedy herein conferred upon or reserved to the Holder is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy. No delay or omission of the Holder to exercise any right or power accruing upon any Default or Event of Default occurring and continuing as aforesaid shall impair any such right or power or shall be construed to be a waiver of any such Default or Event of Default or an acquiescence therein; and every power and remedy given by this Note or by law may be exercised from time to time, and as often as shall be deemed expedient, by the Holder.

## ARTICLE V

**Section 5.01   Failure or Indulgence Not Waiver.** No failure or delay on the part of Holder hereof in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege. All rights and remedies existing hereunder are cumulative to, and not exclusive of, any rights or remedies otherwise available.

**Section 5.02   Unconditional Obligation; Waiver.** The obligations hereunder are absolute and unconditional and not subject to any defense, set-off, counterclaim, rescission, recoupment or adjustment whatsoever. This Note may be enforced against the Company by summary proceeding pursuant to N.Y. Civil Procedure Law and Rules Section 3213, the Uniform Commercial Code or any similar rule or statute in the jurisdiction where enforcement is sought. The Company hereby waives presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance and enforcement of this Note, and shall be directly and promptly liable for the payment of all sums owing and to be owing hereunder, regardless of, and without any notice, diligence, act or omission with respect to, the collection of any amount called for hereunder.

**Section 5.03   Cost of Collection.** If any proceeding is brought or threatened to be brought against the Company to enforce any provision of this Note or any provision of the Security Agreement, the Company shall pay the Holder all costs of collection, including attorneys' fees and expenses.

**Section 5.04 Notices.** All notices, requests, claims, demands and other communications given or made pursuant hereto shall be in writing and shall be deemed to have been duly given if delivered in person against written receipt, by facsimile transmission, overnight courier prepaid, or mailed by prepaid first class registered or certified mail, postage prepaid, return receipt requested to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section):

(i) If to the Company:

BlockChain Technologies Company
Attention: ~~Nicklaus~~ *Nikolaos* Spanos, President
55 Wall Street – Suite 708
New York, New York 10005
Telecopy: 212-475-9132

(ii) If to the Holder:

RVH Inc.
Attention: Robert Herskowitz
PO Box 403303
Miami Beach, FL 33140
Telecopy: 212-787-9268

with a copy (which shall not constitute notice) to:
David Lubin & Associates, PLLC
108 S. Franklin Avenue
Suite 10
Valley Stream, NY 11580
Telecopy: 516-887-8250
Attn: David Lubin, Esq.

All such notices, requests and other communications will

(i) If delivered personally to the address as provided in this Section, be deemed given upon delivery,

(ii) If delivered by facsimile transmission to the facsimile number as provided in this Section, be deemed given upon transmission,

(iii) if delivered by overnight courier to the address as provided in this Section, be deemed given on the earlier of the first business day following the date sent by such overnight courier or upon receipt, or

(iv) If delivered by mail in the manner described above to the address provided in this Section, be deemed given on the earlier of the third business day following mailing or upon receipt.

**Section 5.05   Governing Law.** This Note shall be deemed to be made under and shall be construed in accordance with the laws of the State of New York without giving effect to the principals of conflict of laws thereof. Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the jurisdiction of the courts sitting in the New York, and any appellate court from any thereof, in respect of any action, suit or proceeding arising out of or relating to this Note, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action, suit or proceeding may be heard and determined in such courts. Each of the parties hereto agrees that a final judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each of the parties hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any action, suit or proceeding arising out of or relating to this Note, or in any court referred to above. Each of the parties further hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action, suit proceeding in any such court and waives any other right to which it may be entitled on account of its place of residence or domicile. THE COMPANY IRREVOCABLY WAIVES ANY AND ALL RIGHT THE COMPANY MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS NOTE, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS NOTE OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE COMPANY ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

**Section 5.06   Severability.** The invalidity of any of the provisions of this Note shall not invalidate or otherwise affect any of the other provisions of this Note, which shall remain in full force and effect.

**Section 5.07   Construction and Joint Preparation.** This Note shall be construed to effectuate the mutual intent of the parties. The parties and their counsel have cooperated in the drafting and preparation of this Note and the Security Agreement, and this Note therefore shall not be construed against any party by virtue of its role as the drafter thereof. No drafts of this Note shall be offered by any party, nor shall any draft be admissible in any proceeding, to explain or construe this Note. Each party hereto acknowledges and agrees that it has received or has had the opportunity to receive independent legal counsel of its own choice and that it has been sufficiently apprised of its rights and responsibilities with regard to the substance of this Note. The headings contained in this Note are intended for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Note.

**Section 5.08   Entire Agreement; Amendments.** This Note shall be binding upon and inure to the benefit of and be enforceable by the respective successors and assigns of the Company and the Holder. This Note represents the entire agreement between the parties hereto with respect to the subject matter hereof and there are no other representations, warranties or commitments, except as set forth in this Note and the Security Agreement. This Note may be amended or modified only by an instrument in writing executed by the Holder.

**Section 5.09  Counterparts.** This Note may be executed in multiple counterparts and by facsimile, each of which shall be an original, but all of which shall be deemed to constitute one instrument.

**Section 5.10  Facility Fee.** The Company shall pay simultaneously upon funding a lending fee (the "Facility Fee") from the gross proceeds of this Note equal to

(i) two percent (2%) of the amount funded herewith, one percent upon funding and one percent upon repayment and

(ii) Attorneys' fees and expenses in connection with the transactions contemplated by this Note and the Security Agreement and

(iii) All other costs, expenses and fees incurred in connection with the transaction contemplated hereby, including without limitation, any costs and expenses which may be directly or indirectly incurred by the Holder or its affiliates with respect to its relationship with the Company; expenses under (ii) and (iii) not to exceed $5,000.00.

**Section 5.11  Payments.** Any payments made by the Company to the Holder hereunder shall be applied first to the payment of the Facility Fee, then to the accrued interest hereon and the balance shall be applied to the Principal Amount

*Remainder of Page Intentionally Omitted; Signature Page to Follow*

**IN WITNESS WHEREOF**, with the intent to be legally bound hereby, the parties have executed this Secured Convertible Promissory Note as of the date first written above.

BLOCKCHAIN TECHNOLOGIES
CORPORATION

By: _____
Name: Nick Spanos
Title: President

RVH INC.

By: _____ -President
Name: Robert Herskowitz
Title: President

# EXHIBIT A

Security Agreement

## Exhibit B

Budget