# EXHIBIT C

**Amended and Restated**
**Purchase of**
**Shares and Shareholder Agreement**
**Of**
**BLOCKCHAIN TECHNOLOGIES CORPORATION**

**A New York Corporation**    *NIKOLAOS NS*

*90 THOMPSON STREET*
*APT A1*

AMENDED AND RESTATED SHAREHOLDERS AGREEMENT (this "Agreement") is entered into as of February 24, 2015 by and among ~~Nicklaus~~ Spanos, an individual residing at ~~55 Wall Street. ,Suite 708~~, New York, NY 10008 ("NS") and Robert Herskowitz (RH), an individual residing at 4345 North Jefferson Ave., Miami Beach, Florida 33140 ("RH" and NS and RH collectively, the "Shareholders") and BlockChain Technologies Corporation, a New York corporation with a principal place of business at 55 Wall Street, Suite 708, New York, NY 10005 (the "Corporation").

WHEREAS, the Corporation was formed on November 24, 2014 pursuant to the New York Business Corporation Law (the "Act") and has authorized 200 common shares (the "Shares" of which 80 Shares have been issued to NS;

WHEREAS, in addition of RH purchase of Shares as set forth herein, herewith at the "Closing" as such term is defined herein the Corporation receives a bridge Loan from RVH, Inc, a Delaware corporation with a principle place of business at PO Box 403303, Miami Beach, FL 33140, Attention: Robert Herskowitz , in the amount of Two Hundred Fifty Thousand ($250,000,00) Dollars  and issues to RVH Inc a promissory note for said amount, a copy of which is attached hereto as Exhibit "A" (the "Note") and a first security interest pursuant to a security agreement for the benefit of RVH Inc in all the Corporation's assets, a copy of which is attached hereto as Exhibit "B"  (the "Security Agreement").

WHEREAS, the parties desire to unanimously agree to the terms below stated in regard to the purchase of Shares, operation, management and control of the Corporation.

NOW, THEREFORE, in consideration of the premises and the agreements herein contained and intending to be legally bound hereby, the Shareholders and the Corporation hereby agree as follows:

1. <u>Closing</u>.  The closing (the "Closing") shall take place with the execution of this Agreement at the offices of Global Arena, located at 1500 Broadway – 5th Floor, NY, NY, on February 24, 2015, at 2:00 p.m., or at such other place and time as the Shareholders shall decide. At the Closing RH shall pay for, and the Corporation shall issue the "RH Shares", as set forth in Section 2, hereof to RH.

2. <u>The Payment for, and, Issuance of, RH Shares.</u>  At the Closing RH shall pay by his personal check to the Corporation the total consideration of two Thousand ($2,000.00) Dollars and the Corporation shall issue free of all liens and other encumbrances, 20 Shares to RH under

certificate No. 2, registered in RH name (the "RH Shares"), thereafter representing, on a fully-diluted basis, twenty (20%) percent of all of the then issued Shares.

3.    Use of Note Proceeds and other Corporate Assets.

A.    The note proceeds ("Note Proceeds") shall be deposited in a separate  account as set forth in Subsection 3B and may only be used by the Corporation until the Note is repaid in full as follows:

   (i)    pursuant to the budget  attached hereto as Exhibit C as from time to time amended by a mutual consent by RH and NS in writing (the "Budget");and

   (i1)    otherwise, as specifically approved by RH in writing.

B.    Notwithstanding the forgoing Section 3.A, unless a "Corporate Event" as defined in Section 8.  has taken place and as long as RH shall be a shareholder in the Corporation the Corporation may not:

   (i)    employ any "Family Group Shareholder" (as defined in Section 4.) of any Shareholder or to pay any person or entity more than what is ordinary and customarily paid for the services rendered by such person;

   (ii)    sell, convey, mortgage, grant a security interest in, pledge, lease, exchange or otherwise dispose or encumber, either on a secured or unsecured basis, any or all of the Corporation's assets and, other than in ordinary cause of business, to borrow money and incur liabilities and other obligations;

   (iii)    voluntarily dissolve and liquidate the Corporation.

C.    Notwithstanding anything herein contained to the contrary, for as long as this Agreement shall be in effect the following protection shall apply to the protection of the minority shareholders: The Corporation may not without the consent of the majority of the shareholders (majority of the shareholders is defined as number of shareholders regardless of the amount of shares they hold):

   (i)    employ any "Family Group Shareholder" (as defined in Section 4.) of any Shareholder or to pay any person or entity more than what is ordinary and customarily paid for the services rendered by such person; or

   (ii)    voluntarily dissolve and liquidate the Corporation; and

   (iii)    Any and all expenses expended by the Corporation over and above Three Thousand Five Hundred ($3,500.00) Dollars require two (2) signatories.

   (iv)    Any material change in the corporate business

2

D.     until the Note is paid in full, NS hereby agrees to send to RH, on the following business day in every month, a copy of the bookkeeping entries of money received and expenses paid for during the preceding day and thereafter for as long as RH is a shareholder on or before the fifth (5th) business day each month a copy of the bookkeeping entries of money received and expenses paid for during the preceding month.

4.     <u>Restrictions on Transfer of Shares</u>

A.     Unless a Corporate Event as set forth in Section 8 has taken place and subject to Section 4B hereof, and otherwise unless RH shall have "Transferred", as such term is defined in this Section below, any or all of RH Shares and for as long as RH will be a Shareholder, the RH Shares shall at all times remain at no less than 20% on a fully diluted bases of all of the issued Shares.

B.     Provided that there was no default under the Note and that the Note is paid in full at any time until July 31st ,2015, NS is hereby granted the right to purchase fifty (50% ) of RH Shares for One Thousand ($1,000.00) Dollars, by giving written Notice  thereof to RH accompanied by his check for the said purchase price.

C.     The word "Transfer" and any derivative thereof as used in this Agreement shall refer to any of the following: a sale, assignment, conveyance, bequest, donation, transfer, pledge, hypothecation, any other manner of disposition or encumbrance, or the entry into any agreement, or creation of any situation, that might result in any of the foregoing.

D.     Except as otherwise expressly stated herein, none of the Shareholders shall Transfer any Shares (including any securities issued with respect thereto) now or hereafter owned by him, or any interest therein free and clear of all encumbrances, except:

      (i)     to the Corporation;

      (ii)    to another Shareholder;

      (iii)   if he shall have obtained the written consent of all the Shareholders; or

      (iv)    if such Shares shall be unaccepted Shares at the conclusion of a series of offers made as specified in this Section, and he shall have otherwise complied with the provisions of this Agreement.

E.     Notwithstanding the forgoing Section 4D the issued Shares shall be free of any restrictions on Transfer as follows:

      (i)     a Shareholder shall be permitted to effectuate a Transfer of all or a part of his Shares  to a "Permitted Transferee" (as defined below), *provided* that, in all cases, any such Transfer is otherwise made in accordance with and subject to the provisions of this Agreement. Neither the exercise by the Shareholders of the right granted to them herein nor any Transfer

3

by a Shareholder to a Permitted Transferee shall be subject to the restrictions set forth in this Section 4; *provided*, that any Permitted Transferee that receives any Share shall hold such Shares subject to all of the terms and conditions of this Agreement and shall, as a condition of receiving such Share, expressly agrees to be bound by the provisions of this Agreement and execute and deliver such other instruments as the other Shareholders may deem necessary or desirable to effectuate such admission.

      (ii)    A "Permitted Transferee" means:

          (a)    with respect to any Shareholder that is not an individual, any party that is controlling, or under common control of, such shareholder,

          (b)    with respect to a Shareholder that is an individual, any "Family Group Shareholder" (as defined below),

          (c)    with respect to such individual Shareholder, a corporation or other entity all of the share capital or other equity interests are owned by such individual Shareholder and/or any Family Group Shareholder, and

          (d)    with respect to an individual Shareholder, a person to whom said shareholder's shares have been Transferred by operation of law, by will or by the laws of descent.

      (iii)    A "Family Group Shareholder" means (e) the parents, grandparents, brothers, sisters, descendants (whether natural or adopted) and spouse of the specified individual; (f) any spouse or descendant of any person specified in clause (e) above; (g) any trust created solely for the benefit of any individual described in clauses (e) and (f) above; (h) any executor or administrator for any of the individuals or their respective estates described in clauses (e) and (f) above; (j) any partnership or limited liability company consisting solely of individuals described in clauses (e) through (h) above; and (k) any tax exempt corporate foundation created by any of the persons described in clauses (e) through (j) above exclusively engaged in charitable purposes.

F.    Further, notwithstanding the forgoing Section 4, RH shall convey the RH shares as set for in Section 8(ii) free of any restrictions on Transfer.

G.    Further, notwithstanding the forgoing Section 4D, NS may Transfer a portion of his Shares to Apollo Capital Corp or its individual shareholders ("Apollo") as part of the Services rendered by Apollo.

H.    To the extent permitted by law, the restrictions on Transfer of Shares shall apply to any person acting on behalf of a Shareholder, or succeeding to, or having a power over, his interest by operation of law or otherwise, including, without limitation, any assignee, trustee in bankruptcy, judgment creditor, sheriff, marshal, receiver or officer.

I.    Subject to Sections E, F and G hereof, a Shareholder who desires to Transfer any or all of

his Shares (the "Offeror") shall, make a series of offers to Transfer his Shares on the terms and conditions as set forth in this Section in the following order:

      (i)     a first offer to the Corporation, and if the Corporation shall, in whole or in part, reject such offer or fail to accept the same;

      (ii)    a second offer to the Shareholders for the balance of the non-accepted Shares of the first offer, if any.

J.     If more than one Shareholder accepts the offered Shares (the "Accepting Shareholders"), the number of Shares purchased by each Accepting Shareholders shall be determined by the ratio of the number of Shares owned by such Accepting Shareholder to the number of Shares owned by all Accepting Shareholders.

K.    Each offer made under this Section shall expire at 5:00 p.m. New York time on the tenth (10th) or twentieth (20th) day, respectively, after it is made. Each offer shall be, and shall be stated to be, irrevocable until its expiration.

L.     The offer to each of the Shareholders shall be sent on or before the end of business of the third (3rd) business day following the earlier of:

      (i)     the expiration of the first offer; or

      (ii)    the acceptance or rejection, as the case may be, by the Corporation of less than all of the Shares offered.

M.    Every offer, rejection and acceptance shall be in writing, dated the date it is sent, and signed by the Offeror or Offeree, as the case may be.

N.     If at the completion of a series of offers less than all of the Shares offered have been accepted, the Offeror shall be free to revoke all of the offers made in the series. The Offeror may then, prior to 5:00 p.m. on the thirtieth (30th) day following the day of the expiration of the last offer, Transfer, at an amount not less than so offered, in the Offeror's sole discretion, either:

      (i)     all of the Shares offered in that series; or

      (ii)    the portion of the offered Shares which were unaccepted to any third party, provided that the majority of the shareholders may not object that such shares be sold to a competitor unless the Offeror, also sells all of such objecting shareholders shares at a price that is not less favorable than offered to the Shareholders in the series of offers.

O.     During the aforesaid period when the Offeror shall be free to sell the offered Shares, each Accepting Shareholder shall be bound by his acceptance.

P.     Unless otherwise consented to by the Board of Directors of the Corporation, a Transfer

made to a third (3rd) party pursuant to this Section shall be made at a price equal to or higher than, and otherwise on terms in each and every respect no less favorable to the Offeror as offered to the Corporation and the other Shareholders. Any Shares not then Transferred shall again become subject to all the restrictions of this Agreement and shall no longer constitute unaccepted Shares.

Q.      Any Offeror may discontinue a series of offers at any time except that, other than as set forth in this Section, he may not revoke any outstanding offer, he may begin a new series of offers at any time as to any Shares not the subject of any outstanding offer, and may offer the same Shares any number of times in accordance with the terms of this Agreement.

R.      For the sole purpose of fixing a price per Share in the event of a Transfer resulting from a series of offers, any such Transfer shall be deemed to have taken place as of the date of the dispatch of the first offer.

S.      Payment for each Share Transferred pursuant to this Section shall be made by check within thirty (30) days from the Offeror's written notice that the offer has been accepted.

T.      Except pursuant to Section 4F, a Transfer of Shares made hereunder shall not be effective unless and until the Transferee has executed and delivered to the Corporation a written instrument evidencing the agreement by such Transferee to become a party to and be bound by this Agreement as a Shareholder.

5.      <u>Restriction on Share Certificate</u>.

All certificates representing the Shares issued pursuant to Sections 4, 6 and 7, shall bear the following legend:

"Transfer of the Shares represented by this certificate is restricted by an Agreement dated as of the 24th day of February, 2015, which Agreement contains additional provisions effecting the rights and duties of the holder of such Shares. A copy of said Agreement is on file at the office of the Corporation."

6.      <u>Death and Incapacity</u>.

As of the date of the death, or as of the date of the declaration (by a court having jurisdiction) of the incompetency, of a Shareholder, all of the Shares owned by him shall be Transferred to and purchased by the Corporation at an evaluation determined by a third party independent business appraiser. If and to the extent the third party appraiser of the Corporation reasonably determines that such payment exceeds the Corporation's current financial position, payment for such Shares may be made in equal monthly installments for a period not to exceed 60 month bearing an annual rate of interest of three (3%) on the unpaid purchase price.

7.      <u>Additional Contributions; Preemptive Rights</u>.

A.      Subject to the restrictions set forth herein, if a majority of the holders of the Shares

determine to seek to raise additional capital for the Corporation by issuing any New Securities (as defined below), the Corporation shall offer to sell the New Securities to each of the Shareholders, pro rata in accordance with their respective proportion as the Shareholders holds shares prior to seeking capital at the same price and on the same terms proposed to be issued or sold by the Corporation to others so that each of the Shareholders would, after the issuance or sale of all such New Securities, hold the same percentage interest in the Corporation as he had immediately prior to the issuance or sale of the New Securities. Each Shareholder shall be required to deposit with the Corporation the additional capital contribution required by such notice by the date specified therein, which shall be not later than thirty (30) business days following the date of such notice. If a Shareholder does not exercise his entire right to purchase such additional New Securities, or any portion thereof, the other Shareholders shall have the right to purchase their respective proportionate amount of such New Securities.

B.      "New Securities" means any Shares or other securities or other rights convertible or exchangeable into or exercisable for Shares; *provided, however*, that "New Securities" does not include:

        (i)     securities issued in connection with any split or dividend or any distribution to all the Shareholders based on their outstanding Shareholdings; and

        (ii)    securities issued as consideration for, or in connection with, any merger or acquisition of the stock or assets of any person or entity acquired by the Corporation.

C.      If the Shareholders fail to exercise in full such right within five (5) business days after written notice, the Corporation shall then be free to sell the New Securities in respect of which the Shareholders' rights were not exercised, at a price and upon general terms and conditions no more favorable to the purchasers thereof than specified in the Corporation's notice to the Shareholders pursuant to this Section 7.

D.      Any sale of New Securities pursuant to this Section 7 shall be made, if made in arms length , on such terms and conditions as are determined by the Shareholders, which terms and conditions may include, among other things, a preferential return on such investment, superior dividend, voting and liquidation rights and/or a dilution of the Shareholders' percentage interest in the Corporation as a result of the issuance of the New Securities, other than with respect to the right granted to RH as provided herein.

8.      Special Corporate Events. Notwithstanding Section 7., in the event (the "Corporate Event(s)") that:

        (i)     the Corporation shall raise additional equity capital of not less than Seven hundred Fifty Thousand ($750,000.00) Dollars at a valuation of Two Million Five Hundred Thousand ($2,500,000.00) Dollars or higher, upon the closing of such financing RH Shares may be diluted accordingly and the restrictions set forth in Sections 4A shall be released and no longer be in effect, whether or not RH desire to participate in the acquisition of Shares in such financing; provided that the Corporation forthwith utilizes such amount to pay off the note and accrued interest to RVH Inc. in full.

(ii)     the Corporation shall make a reverse merger with Global Arena Holding, Inc ("Global"), RH will sell the RH Shares on terms and conditions agreed between RH and Global; *provided* at that time the note shall be fully paid and the restrictions set forth in Section 4A and are thereby released and no longer be in effect; and/or

(iii)    Prior to the Maturity Date or any extension thereof as set forth in the Note the Corporation may without RH approval raise Three Hundred Fifty Thousand ($360,000.00) Dollars in debt or equity or securities convertible into or exchangeable or exercisable for debt or equity; *provided* that the Corporation forthwith utilizes such amount to pay off the Note and accrued interest to RVH Inc in full.

9.    Loans.

A.    Except for the Note, no Shareholder or his associates shall advance any funds to the Corporation without the prior approval of the other Shareholders and compliance with the provisions of this Section.

B.    If, upon the request of the Corporation and the other Shareholders any Shareholder (in such capacity, the "Lending Shareholder") shall agree to advance any funds (the "Total Advance"), the amount of any such Total Advance or portion thereof shall be viewed as a total independent transaction based on its own terms and conditions.

C.    If any such Lending Shareholder agrees to advance the Total Advance, then the other Shareholders shall have the right, but not the obligation, to advance their pro rata portion (based on their respective Shareholdings) of any such Total Advance to the Corporation on the same terms and conditions as the Lending Shareholder, and the amount of the Total Advance of the Lending Shareholder shall be reduced by the amount that the other Shareholder(s) advances to the Corporation.

D.    The amount of any such advance shall be a debt obligation to the Corporation to the Lending Shareholder(s) and shall be subject to such terms and conditions as may be acceptable to the Corporation and such Shareholder(s). Any such advances shall be payable and collectible only out of Corporation assets, and the other Shareholders shall not be personally obligated to repay any part thereof.  No person who makes any nonrecourse loan to the Corporation shall have or acquire, as a result of making such loan, any direct or indirect interest in the profits, capital or property of the Corporation, other than as a creditor. No Shareholder shall have any obligation whosoever to advance any funds to the Corporation.

10.    Management of the Corporation; Directors and Officers.

A.    The number of Directors constituting the Corporation's Board of Directors shall be no less than one (1). All actions by the Board of Directors shall be by a majority and, a majority of the Board shall be necessary to constitute a quorum for the transaction of any business.

B.    Unless a "Corporate Event" as defined in Section 8 has taken place, until the Note is fully

paid, RH may nominate such number of Directors as shall constitute a majority of Directors to be Directors of the Corporation, and each Shareholder agrees to vote his Shares to elect and retain such nominee(s) as Directors of the Corporation. Further during such period any Director shall be removed as a Director at the request of the Shareholder who nominated him. If any Director shall for any reason cease to be a Director, the Shareholder who nominated him may nominate a successor, who shall thereupon be elected and retained as a Director of the Corporation until his successor has qualified and has been elected.

C.      The Shareholders agree to cause the following:

(i) person to be nominated a Director of the Corporation: Nicklaus Spanos; and

(ii) the Corporation agrees to cause its Board to elect the following persons to the offices of the Corporation as set forth opposite their name:

|   |   |
|---|---|
| President | ~~Nicklaus~~ *NIKOLAOS* Spanos |
| Treasurer | _____ |
| Secretary | _____ |

D.      Notwithstanding anything contrary contained in this Section 10, *provided* that there was no default under the Note, a breach of this agreement or any other written agreement between the parties,  an order, judgment or decree entered by any court of competent jurisdiction against NS for an act resulting from his gross negligence, gross malfeasance, fraud or his conviction of a felony crime, NS may not be removed by the Shareholders as a Director of the Corporation or by the Board of Directors as the President of the Corporation.

E.      In the event that this Section 10 shall be held in any way to constitute a voting trust, such provision shall remain in force and effect until the tenth (10th) anniversary date hereof and, shall thereafter, be renewed for the earlier of:

(i)      that RH is no longer a shareholder,

(ii)     that a Corporate Event has taken place as set forth in Section 8 or

(iii)    for successive ten (10) year periods.

F       Except where the other Shareholders' approval is expressly required by the Act and/or this Agreement, the President of the Corporation shall manage the Corporation's affairs, its business and to set such policies and establish such business plans and procedures, as he shall reasonably determine.

11.     <u>Meetings of Shareholders</u>.      Except as otherwise required by law,

(i)      the Corporation shall not be required to hold meetings of Shareholders annually or at regular intervals. Meetings of the Shareholders may be called at any time by the Chairman of the Board, if any elected or the President, by RH, or any two Shareholders, in their sole and

9

absolute discretion, for any purpose or purposes, and shall be held at such times and places within or without the State of New York as two Shareholders shall determine

(ii)     Notice of the time, place and purpose or purposes of each meeting of the Shareholders shall be delivered to each Shareholder either personally (including by courier) or by telephone, facsimile or first class mail, postage prepaid, addressed to the Shareholders at their mailing address set forth in the records of the Corporation or by email with require verification of receipt, at least five (5) but not more than thirty (30) days before the date of the meeting.  Notice of a meeting need not be given to any Shareholder who, either before or after the meeting, executes a waiver of notice, or who attends such meeting without objecting, at its beginning, to the transaction of any business because the meeting is not lawfully called or convened.

12.     <u>Confidentiality</u>.

A.     Each Shareholder covenants and agrees that such Shareholder, and agrees to cause such Shareholder's employees, officers, directors, stockholders, agents, representatives, affiliates and the successors and assigns thereof to covenant and agree, to retain in strict confidence, and  not to use for any purpose whatsoever, and not to divulge, disseminate or disclose to any third party (other than in furtherance of the business purposes of the Corporation or as may be required by law) any proprietary or confidential information relating to the Corporation or its business, including, without limitation, financial information, development plans, pricing information, business methods, management information systems and software, customer lists, supplier lists, leads, solicitations and contacts, know-how, show-how, inventions, techniques, improvements, specifications, trade secrets, agreements, research and development, business plans and marketing plans of the Corporation (all of such information being hereinafter referred to as "Confidential Information"), whether or not any of the foregoing are copyrightable or patentable. The provisions of this Section 11 shall survive and continue to bind each Shareholder notwithstanding any such Shareholder ceasing to be a Shareholder of the Corporation. For purposes of this Agreement, information shall not be deemed Confidential Information if:

(i)     such information is available in full from public sources;

(ii)     such information is received from a third (3rd) party not under an obligation to keep such information confidential; or

(iii)     the recipient can conclusively demonstrate that such information had been independently developed by the recipient in a capacity unrelated to his duties and/or position with the Corporation.

B.     Notwithstanding the forgoing, the restriction by a party to retain in strict confidence Confidential Information as set forth in Section 12A hereof shall terminate at the end of sixty (60) months from the date such party is no longer a Shareholder.

13.     <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to conflict of law rules applied in such State.

14      Consent to Jurisdiction.  All actions and proceedings arising out of, or relating to, this Agreement shall be heard and determined in any state or federal court sitting in New York, New York.  The undersigned, by execution and delivery of this Agreement, expressly and irrevocably:

(i)      consent and submit to the personal jurisdiction of any of such courts in any such action or proceeding;

(ii)      consent to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed as set forth in Section 16. of this Agreement; and

(iii)      waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue or forum non convenient or any similar basis.

15.      Modifications and Amendments.  This Agreement constitutes the entire understanding among the parties hereto.  No waiver or modification of the provisions of this Agreement shall be valid unless it is in writing and signed by the party to be charged and then only to the extent therein set forth.

16      Notices.  All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be given or made (and shall be deemed to have been duly given or made upon receipt) by delivery in person, by courier service, by facsimile, or by registered or certified mail (postage prepaid, return receipt requested) or by email with verified receipt by addressee to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 16:

| | | |
|---|---|---|
| (i) | if to the Corporation, to: | ~~Nicklaus~~ Spanos, President |
| | | BlockChain Technologies Corporation |
| | | Address: ~~55 Wall Street, Suite 708~~ |
| | | New York, NY 100~~03~~ |
| | | Facsimile: 212 · 475 · 9132 |
| | | Email: _____ |

*handwritten: NIKOLAOS, 55 WALL STREET, 60 THOMPSON ST APT A1*

| | | |
|---|---|---|
| (ii) | if to Robert Herskowitz | Address: 4345 North Jefferson Ave., |
| | | Miami Beach: Florida 33140 |
| | | Facsimile: 212-787-9268 |
| | | Email: robbie490@aol.com |

*handwritten: NIKOLAOS*

| | | |
|---|---|---|
| (iii) | if to ~~Nicklaus~~ Spanos | Address: ~~55 Wall Street, Suite 708~~ |
| | | New York, NY 10005 |
| | | Facsimile: 212-475-9132 |
| | | Email: nick@bapple.com |

*handwritten: 60 THOMPSON ST APT A1*

| | | |
|---|---|---|
| (iv) | if to any other Shareholder | at the address indicated on the Schedule of Shareholders maintained by the Corporation. |

11

17.     Captions.    The captions used in this Agreement are intended for convenience of reference only, shall not constitute any part of this Agreement and shall not modify or affect in any manner the meaning or interpretation of any of the provisions of this Agreement.

18.     Pronouns.    All pronouns and any variation thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person or persons may require.

19.     Execution.    This Agreement can be executed in counterparts and by facsimile or other electronic means, as so executed, shall constitute one agreement binding on the Corporation and the Shareholders.

20.     Binding Effect.    Except as otherwise provided herein, this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, legal representatives, and permitted successors and assigns of the parties hereto.

21.     Separability.    In case any one or more of the provisions contained in this Agreement or any application thereof shall be deemed invalid, illegal or unenforceable in any respect, such affected provisions shall be construed and deemed rewritten so as to be enforceable to the maximum extent permitted by law, thereby implementing, to the maximum extent possible, the intent of the parties hereto, and the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

22.     Further Assurances.    The Shareholders shall execute and deliver such further instruments and documents and do such further acts and things as requested which may be required to carry out the intent and purposes of this Agreement.


*[REMAINDER OF PAGE INTENTIONALLY OMITTED;*
*SIGNATURE PAGES TO FOLLOW]*

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Amended and Restated Purchase of Shares and Shareholder Agreement as of the date first written above.

BLOCKCHAIN TECHNOLOGIES CORPORATION

By:

Name: Nickaulas Spanos, President

Nickaulas Spanos

Robert Herskowitz

**EXHIBIT A**
**The Note**

**EXHIBIT B**
**The Security Agreement**

## EXHIBIT C
**The Budget**