# EXHIBIT D

# RVH Inc.
# Post Office Box 403303
# Miami Beach, FL 33140

July 18, 2018

Via E-Mail – nick@blocktech.com

Blockchain Technologies Corporation
Mr. Nikolaos Spanos - CEO
157 Prince Street
New York, NY 10012

Re:   Notice of Events of Default under Promissory Note

Dear Mr. Spanos:

This notice is made on behalf of RVH Inc. in connection with the loan made by RVH Inc. (the "Lender or RVH") to Blockchain Technologies Corporation, and any of their respective subsidiaries (collectively the "Company").

**Loan Documents**

Reference is made to the following documents ("Loan Documents"):
1. Promissory Note from the Company in favor of Lender, in the original principal amount of $250,000, dated February 24, 2015 as amended on September 1, 2018 (the "Promissory Note")
2. Security Agreement between Lender and the Company, dated as of February 24, 2015 ("Security Agreement").
3. As well as all other documents between the Company and Lender.

**Notice of Events of Default under the Promissory Note**

Lender hereby gives notice of the following "Events of Default" under the Promissory Notes and Security Agreement:
   a. The Company has not paid the $300,000 of Principal due on or before February 28, 2018.

This letter contains confidential and privileged information. It is intended solely for the addressee. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted in reliance on this letter, is prohibited.

b. The Company has not paid any of the Interest due from September 1, 2017.
c. The Company has not paid the Principal, Interest and Facility Fee due on the Maturity Date March 1, 2018.
d. The Company has not made any payments from the date of the loan.
e. The above defaults as well as other defaults not mentioned herein.

Nothing contained in this letter is intended to create or constitute a waiver, modification, relinquishment or forbearance by Lender of any of Lender's rights, remedies or claims under any of the Loan Documents or at law or in equity (including but not limited to any rights, remedies and claims in connection with any other Event of Default now or hereafter existing). All such rights, remedies or claims are hereby expressly reserved. No failure or delay on the part of Lender in the exercise of any power, right or privilege under the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege.

Very truly yours,

*[signature]* - President
RVH Inc.

This letter contains confidential and privileged information. It is intended solely for the addressee. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted in reliance on this letter, is prohibited.

## NOTICE

**NOTICE IS HEREBY GIVEN** that on August 9, 2018, at 10:00 A.M. Eastern Daylight Time (the "Date of Sale"), RVH Inc. as secured party (the "Secured Party") under that certain security agreement dated as of February 24, 2015, (the "Security Agreement") executed by Blockchain Technologies Corporation ("Debtor"), intends to sell the collateral described below at public sale in accordance with Section 9-610 of the Uniform Commercial Code as enacted in the State of New York (the "UCC"). The Debtor defaulted by failing to pay all sums due that were secured by the Security Agreement. The public sale will be held at the offices of Eilenberg & Krause LLP., 11 East 44th Street, 19th Floor, New York NY 10017.

Terms used and not defined in this Notice shall have the meanings given to them in the Security Agreement, which will be made available to prospective bidders that execute a confidentiality agreement (each such confidentiality agreement, a "Confidentiality Agreement"). Any prospective bidder may obtain a Confidentiality Agreement from the Secured Party by request as set forth in this Notice.

The property to be sold at the public auction is all the property of Blockchain Technologies Corporation given as security to RVH Inc. pursuant to the Security Agreement, including but not limited to (i) all its Pledged Property, Accounts and General Intangibles, Patents, Trademarks, Copyrights, Registrations, Trade Names, Licenses, Intellectual Property and Software; Goods; Books and Records; all Contract Rights; Software; Products and Proceeds; Claims; and Equity Interests as those terms are defined in the Security Agreement including its ownership interests or any interest in Slidechain LLC, Overseas BC Marketing, Inc., Cryptos Ltd., Digital Assets Vending Equipment Inc., Hermes, Ltd, Blockchain Apparatus, LLC., Bitcoin Center NYC, Livery Cab, Inc., Escrow Payment, Inc., Mining Bot, Inc., Prometheus Assets, LLC., Prometheus Group, LLC., Exgate, Ltd., GAHI Acquisition Corp., Global Arena Holding Inc., and any other subsidiaries or company which Blockchain Technologies Corporation has an interest in. Assets excluded from the sale are all rights to pursue an action or actions in civil or criminal court including but are not limited to the following assets: all Debtor's and/or shareholders rights and remedies against Nikolaos Spanos, Zap, The Synapse Foundation, all past employees of BTC for the following including but not limited to Breach of Contract, Conversion, Fraud, Misrepresentation, Breach of Fiduciary Duty and/or Responsibilities, Unjust Enrichment, Comingling of Funds, Theft, the use of a vehicle for a Ponzi-esque type scheme; The Collateral is being sold as a package and will not be separated into lots.

For terms and conditions of the sale and further information concerning the Collateral or the Public Sale herein described, prospective bidders may contact Eilenberg & Krause LLP., 11 East 44th Street, New York, NY 10017 Attention: Keith Moskowitz (Tel. No.: (212) 986–9700x335) (Fax No.: (212) 986-2399) (email:km@eklawllp.com).

## TERMS OF PUBLIC SALE

**NOTICE IS HEREBY GIVEN** that on August 9, 2018, at 10:00 A.M. Eastern Daylight Time (the "Date of Sale"), RVH Inc. as secured party (the "Secured Party") under that certain security agreement dated as of February 24, 2015, (the "Security Agreement") executed by Blockchain Technologies Corporation ("Debtor or BTC"), intends to sell the collateral described below at public sale in accordance with Section 9-610 of the Uniform Commercial Code as enacted in the State of New York (the "UCC"). The public sale will be held at the offices of Eilenberg & Krause LLP., 11 East 44th Street, 19th Floor, New York, NY 10017.

Terms used and not defined in this Notice shall have the meanings given to them in the Security Agreement, which will be made available to prospective bidders that execute a confidentiality agreement (each such confidentiality agreement, a "Confidentiality Agreement"). Any prospective bidder may obtain a Confidentiality Agreement from the Secured Party by request as set forth in Section 5 of this Notice.

The property to be sold at the public auction will be all of the Debtor's right, title and interest in the "collateral" (as defined in the Security Agreement) consisting of all the property, contracts, patents, trade names, trademarks, contacts, licenses, contracts and any other assets related to the Debtor's operations and rights (the "Collateral"). Assets excluded from the sale are all rights to pursue an action or actions in civil or criminal court including but are not limited to the following assets: all Debtor's and/or shareholders rights and remedies against Nikolaos Spanos, Zap, The Synapse Foundation, all past employees of BTC for the following including but not limited to Breach of Contract, Conversion, Fraud, Misrepresentation, Breach of Fiduciary Duty and/or Responsibilities, Unjust Enrichment, Comingling of Funds, Theft, the use of a vehicle for a Ponzi-esque type scheme; The Collateral is being sold as a package and will not be separated into lots.

Terms and Conditions. The terms and conditions of the public auction (the "Public Sale") are as follows:

1. The Public Sale shall be a public auction to the highest qualified bidder. The Collateral will be sold as a block, and will not be divided or sold in any lesser amounts. The Collateral will be sold at the Public Sale for cash at such price and on such other commercially reasonable terms as the Secured Party may determine. The minimum bidding increments during the Public Sale will be $25,000 or such other amount as the Secured Party may announce at the Public Sale. Higher bids will continue to be entertained until the Secured Party has determined that it has received the highest bid from a qualified bidder. The Secured Party will be permitted to bid at the Public Sale and, notwithstanding any requirement herein that the sale of the Collateral be for cash, the Secured Party may credit-bid on behalf of the Lenders all or any portion of the outstanding balance of the amounts due to the Lenders by the Debtors under the Security Agreements and, in the event no qualified bidder bids more than the amount of any credit-bid of the Secured Party, then such credit-bid of the Secured Party shall be deemed the highest bid and the Secured Party shall be deemed to be the purchaser of the Collateral in accordance with UCC Section 9-610. The Secured Party reserves the right to (a) reject all bids and terminate the Public

Sale or adjourn the Public Sale to such other date and time as the Secured Party may deem proper, by announcement prior to the date of the Public Sale or at the place and on the date of the Public Sale, and any subsequent adjournment thereof, without further publication, and (b) impose any other commercially reasonable conditions upon the Public Sale of the Collateral and subsequent Collateral Closing Date (as defined below) as the Secured Party may deem proper.

2. The Collateral is offered **"AS-IS, WHERE IS"**, with all faults, and there is no warranty by the Secured Party relating to title, possession, quiet enjoyment, merchantability, fitness or the like in this disposition. The Secured Party makes no guarantee, representation or warranty, express or implied, as to the existence or nonexistence of other liens, the quantity, quality, condition or description of the Collateral, the value of the Collateral, the Debtors' rights in the Collateral or the assets of any of the Pledged Entities. The transfer of the Collateral will be made without recourse and without representation or warranty by the Secured Party, and subject to all defenses of the Secured Party. Upon the delivery of a fully executed Confidentiality Agreement and the written request therefore, the Secured Party will provide to prospective bidders with a package that contains certain relevant information that the Secured Party possesses concerning the Debtor. No information provided to a prospective bidder in response to any such request shall constitute a representation or warranty of any kind with respect to such information, the Collateral or the Public Sale.

Prospective bidders are hereby advised that (a) although the Secured Party has provided access to certain information regarding the Debtor and the Collateral referenced above, there is no assurance that the Secured Party does not have information that it is contractually or legally prohibited from providing to potential bidders due to restrictions in confidentiality agreements or otherwise, or that the Secured Party has disclosed all information in its possession, and (b) the Secured Party may be in possession of information which prospective bidders may not have. PROSPECTIVE BIDDERS ARE ENCOURAGED TO PERFORM SUCH DUE DILIGENCE AS THEY DEEM NECESSARY.

3. In order for a prospective bidder (other than the Secured Party) to be a "qualified bidder" and eligible to bid at the Public Sale, each such prospective bidder must (a) be physically present at the Public Sale, (b) register with the Secured Party and execute and deliver to the Secured Party the Securities Certification (defined below) and Escrow Agreement, (c) deposit with Eilenberg & Krause LLP. (the "Escrow Agent") the sum of $200,000.00 (the "Required Deposit") by bank check or by wire transfer of immediately available funds in accordance with instructions provided by the Secured Party no later than three (3) Business Days prior to the start of the Public Sale (which Required Deposit shall be refunded, without interest, by the Escrow Agent in the event that such bidder is not the successful bidder, subject to the right of the Secured Party to designate one or more back-up bidders and to retain their respective Required Deposits in accordance with the terms provided below). In addition to the Required Deposit, each prospective bidder may be required to demonstrate in advance of bidding, to the Secured Party's satisfaction, its financial ability to tender payment for the Collateral if it is selected as the winning bidder or as a back-up bidder.

All prospective bidders will be required to represent in writing to the Secured Party (the "Securities Certification") that each prospective bidder (i) is acquiring the any securities portion of

the Collateral for investment purposes, solely for the purchaser's own account and not with a view to distribution or resale of the Collateral; (ii) has sufficient knowledge and experience in financial and business matters so as to be capable of evaluating the merits and risks of investment and has sufficient financial means to afford the risk of investment in the Collateral; and (iii) will not resell or otherwise hypothecate the any securities portion of the Collateral without a valid registration under applicable federal or state laws, including, without limitation, the Securities Act of 1933, as amended, or an available exemption therefrom. In the Securities Certification, a prospective bidder must indemnify the Secured Party with respect to any claim based on any misrepresentation or inaccuracy of the information contained in such Securities Certification. Additionally, a qualified bidder must satisfy the Secured Party (and its counsel) that its purchase of the Collateral is in compliance with all applicable federal and state laws. If a prospective bidder is a special purpose entity or an entity with creditworthiness that is, in the Secured Party's reasonable judgment, insufficient to support the representations, warranties and indemnification provisions set forth in the Securities Certification, the Secured Party reserves the right to require additional credit support in the form of a guaranty by a creditworthy affiliate of such prospective bidder or such other appropriate credit support as the Secured Party may request in its sole discretion.

All prospective bidders will be required to deliver to the Escrow Agent an executed copy of the escrow agreement governing the deposit of the Required Deposit with the Escrow Agent.

No bids may be withdrawn once made during the Public Sale, but no sale shall be final until accepted in writing by the Secured Party. Within one (1) Business Day following the conclusion of the sale, time being of the essence, the successful bidder will be required to (a) execute a confirmation of sale satisfactory to the Secured Party. The balance of the purchase price for the Collateral must be paid by bank check or wire transfer of immediately available funds, upon the execution and delivery of any closing documents required by the Secured Party. The Collateral Closing Date shall take place on a date set by the Secured Party no later than thirty (30) days after the date of the Public Sale, time being of the essence (such date, the "Outside Date"). Upon payment in full, the purchaser shall receive a certificate representing the Collateral purchased and a transfer statement transferring the Collateral, without guaranty of signatures, without payment of any transfer or other tax (which shall be the sole responsibility of the successful bidder), without warranty by or recourse to the Secured Party, its agents or its representatives, subject to all defenses, and otherwise in form and substance acceptable to the Secured Party. If the successful bidder(s) are the Lenders, then the foregoing requirements will not apply and payment for the Collateral may be made by applying against the purchase price the amounts due to the Lender by the Debtors under the Security Agreement.

If the Lenders are not the highest qualified bidder for the Collateral, the Secured Party reserves the right to designate a back-up bidder. If a back-up bidder is selected, the back-up bidder's Required Deposit will remain with the Escrow Agent until refunded as provided below. If the highest qualified bidder posts its Second Deposit with respect to the Collateral, the Required Deposit will be promptly returned to the back-up bidder. If the highest qualified bidder does not timely post its Second Deposit, then the back-up bidder shall be notified within five (5) Business Days after the auction (the "Back-up Bidder Notice"), and shall be obligated, within one (1) Business Day of receiving the Back-up Bidder Notice from the Secured Party, to (a) deposit with the Escrow Agent the Second Deposit for the Collateral and (b) execute a confirmation of sale in a

form to be provided by the Secured Party. If a Back-up Bidder Notice is not delivered to a back-up bidder within five (5) Business Days after the auction, then the Required Deposit shall be promptly returned to such back-up. If a back-up bidder is ultimately selected as the winning bidder for the Collateral, the back-up bidder will be required to pay the balance of the purchase price for the Collateral to be purchased by the back-up bidder by bank check, or wire transfer of immediately available funds, no later than thirty (30) days after delivery of the Back-up Bidder Notice from the Secured Party to the back-up bidder, time being of the essence. The sale of the Collateral to a back-up bidder will otherwise be consummated on the same terms as applicable to the highest qualified bidder at the Public Sale. If the back-up bidder for the Collateral are the Lenders, then the foregoing requirements will not apply to the Collateral and payment for the Collateral may be made by applying against the purchase price the amounts due under the Security.

4. If the Secured Party is unable for any reason to consummate the sale of the Collateral to a successful bidder at the Public Sale and to execute and deliver the closing documents, its sole obligation to the successful bidder shall be the return of the principal amount of such bidder's deposit(s). If the successful bidder is unable for any reason to timely deliver the Second Deposit, the Secured Party shall retain the Required Deposit paid by the bidder as liquidated damages for the costs of the Public Sale and for its loss of bargain, in lieu of all other damages, and the Secured Party may accept the next highest qualified bid at the Public Sale. If a successful bidder or back-up bidder timely delivers the Second Deposit for the Collateral, but is unable for any reason to consummate the purchase of the Collateral on or prior to the Outside Date (as the same may be extended if one or both of the extension options are timely and properly exercised), the Secured Party shall retain the Required Deposit and the Second Deposit paid by such bidder as liquidated damages for the costs of the sale and for its loss of bargain, in lieu of all other damages. By bidding at the Public Sale, each bidder acknowledges that it would not be possible to ascertain the Secured Party's actual damages under the circumstances described in the preceding sentences. A successful bidder or back-up bidder shall have no right to postpone or nullify a sale of the Collateral if it is unable to meet any of the requirements under any document relating to the Collateral.

5. For further information concerning the Collateral or the Public Sale herein described, prospective bidders may contact Eilenberg & Krause LLP., 11 East 44th Street, New York, NY 10017 Attention: Keith Moskowitz (Tel. No.: (212) 986–9700x335) (Fax No.: (212) 986-2399) (email:km@eklawllp.com).