ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.
875 THIRD AVENUE, 9TH FLOOR
NEW YORK, NEW YORK 10022

(212) 603-6300

FAX (212) 956-2164

February 1, 2019

212-603-6395
prg@robinsonbrog.com

**VIA ECF**

Hon. Allison J. Nathan
United States District Judge
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *BlockChain Technologies Corp. v. RVH Inc. et al.*,
               No. 18-cv-09352 (AJN)

Dear Judge Nathan:

      We represent Plaintiff BlockChain Technologies Corporation ("BlockChain" or "BTC") and Third-Party Defendants Nikolaos Spanos ("Spanos") and The Synapse Foundation d/b/a Zap.org ("Zap") in the above-referenced litigation pending in the United States District Court for the Southern District of New York (the "Action"). We write this letter jointly with Alan Avery Heller, counsel for Defendants RVH Inc. ("RVH") and Robert Herskowitz ("Herskowitz," together with RVH, "Defendants"), to advise the Court of the status of the Action, as directed in Your Honor's Order of October 18, 2018, and in advance of the initial conference, scheduled for February 8, 2019. (*See* Docket No. 9.)

**I.    Nature of the Action — Plaintiff/Third-Party Defendants' Position**

      BTC sued Defendants RVH and Herskowitz for breach of contract and declaratory relief arising from RVH's failure to fund a $250,000 loan to BTC (the "Loan"). The Loan is evidenced by a 12% convertible promissory note issued to RVH (the "Note") and a security agreement pledging BTC's assets as collateral for the Loan (the "Security Agreement"). The Loan, and RVH's obligation to fund it, also are evidenced in the Amended and Restated

Purchase of Shares and Shareholder Agreement of Blockchain Technologies Corporation (the "Shareholder Agreement") among BTC, Herskowitz, the owner of RVH, and Spanos, the President and majority shareholder of BTC.

The Complaint alleges that the Loan (characterized as a short-term bridge loan) was part of a contemplated reverse-merger transaction between BTC and Global Arena Holding, Inc. ("Global") that never materialized. Under that transaction, Global would have invested approximately $1,000,000 in BlockChain. Spanos would have received stock in Global, BlockChain would have become a subsidiary of Global, and Spanos would have continued to control BTC. As part of those merger discussions, Global introduced Spanos to Herskowitz, whose company made the Loan in exchange for Herskowitz receiving equity in BlockChain and RVH receiving a security interest in BTC assets which was to extinguish when the Loan was paid off (by Global). BlockChain now believes that Global, in concert with Herskowitz, never intended to consummate this transaction, pay off the Loan, or facilitate the exchange of Herskowitz's BlockChain shares for Global shares, and purposely acted to deceive Spanos and induce BlockChain to enter into the Loan and to assist Herskowitz to obtain equity in BlockChain.

Despite the fact that RVH failed fully to fund the Loan, thus breaching its obligations under the Note and the Security Agreement, RVH and Herskowitz have disingenuously alleged an Event of Default under the Note, ignored BTC's demands for a payoff letter, ignored BTC's attempts to return the amounts RVH advanced under the Loan (less than 50% of the total amount RVH was obligated to advance under the Loan), refused to provide an accounting of monies that Herskowitz contends he has loaned and illegally attempted to schedule a public sale of BTC's assets pursuant to the Security Agreement and N.Y. U.C.C. § 9-610.

BTC seeks compensatory damages, declaratory relief setting forth the rights of the Parties under the Note, the Shareholder Agreement and the Security Agreement, and rescission, voiding the Note, the Shareholder Agreement and the Security Agreement. BTC has previously attempted, and intends, to return any monies RVH advanced to it and demands that Herskowitz return the shares BTC issued to him.

## II. Nature of the Action — Defendants' Position

Defendants' deny the allegations asserted in the Complaint and have interposed Counterclaims and Third Party Claims. These claims arise out of the breach of contract and fraudulent conduct of Counterclaim Defendant Spanos and Plaintiff when, among other things, Spanos fraudulently induced RVH into delivering monies to BTC under the guise that BTC would use the monies to remodel and expand The Bitcoin Center to accommodate live Bitcoin trading, act as a corporate center, handle major public events and serve as a working environment for the development of Bitcoin and blockchain technology companies as well as other crypto opportunities. It was at all times understood and agreed that upon signing of the agreements between BTC and the Defendants the Defendants would thereafter share, pro rata

through BTC, in those and other Bitcoin, blockchain and cryptocurrency transactions/technology developed by Spanos and/or his related entities. Defendants allege that BTC did not use any of the monies delivered by RVH for the remodeling of The Bitcoin Center's facility as required. Instead, it used the money to pay for, among other things, daily meals, alcohol and fancy lunches and dinners at high end restaurants, travel and personal projects. Because of Spanos' aforementioned misuse and diversion of RVH's monies, the request by Spanos for additional monies for alleged use by BTC was rejected by RVH.

Notwithstanding the fact that monies were loaned to Plaintiff, Plaintiff never paid interest on those monies or repaid those monies at maturity. Over the course of time, the Parties entered into agreements to amend the principal to be paid to RVH and, in reliance upon those agreements, RVH extended the date to repay RVH and gave up certain additional rights it had under the default provisions of the Note. Since Plaintiff has not repaid one dime of the monies loans by RVH or complied with the post-default agreements entered into with RVH, RVH seeks damages in the amount of $300,000 with interest thereon. Also, because Plaintiff was in default of its obligations under the Note, RVH seeks an Order declaring that (i) it had no obligation to lend any additional monies to BTC under the Note, (ii) on April 1, 2015, BTC was in monetary default under the Note; (iii) prior to April 1, 2015 was in non-monetary default under the Note; (iv) on the Note Maturity Date of August 23, 2015, BTC was in default on its obligation to repay the $110,000 in Principal Amount due to RVH with accrued interest thereon, and (v) after BTC's default interest accrued on the unpaid Principal Amount at the rate of 24% per annum.

Defendants also claim that Spanos raised monies delivered by Defendants under false pretenses. While he represented that the monies were to be used in accordance with a remodeling Budget, what he did not disclose was that approximately one month before monies were delivered to BTC, an Order had been executed by the Hon. Gerald Lebovitz of the New York Civil Court Non-Housing Part granting BTC's landlord a warrant of eviction from the very premises for which Spanos represented the remodeling monies were to be used and held that The Bitcoin Center was indebted to the landlord in an amount that exceeded $350,000. Thus, not only could these monies not be used (and were not used) to remodel The Bitcoin Center at 40 Broad Street at the time they were taken in by him and BTC, Spanos at all times knew that these monies would be used for something other than the stated purpose.

Defendants also claim that, although, as of February 24, 2015, Herskowitz was a 20% owner of BTC which, among other things, was organized for the development of Bitcoin and blockchain technology companies, Spanos, without the knowledge, authorization or consent of Herskowitz, usurped assets, know-how, business opportunities and personnel from The Bitcoin Center and BTC (including, but not limited to, zap.org) and transferred them to an entity in which Herskowitz and RVH was given no ownership interest so that Spanos could reap the entire benefit from zap.org (and, presumably, other Bitcoin, blockchain and cryptocurrency projects) and not share any of its benefits with Herskowitz. Defendants allege that the upshot of this conduct and theft of corporate opportunity is that Spanos, through another entity, zap.org completed an Initial Coin Offering ("ICO") and Herskowitz was precluded from any

participation in this offering. Had Spanos not defrauded Herskowitz and precluded him from the zap.org ICO, as 20% owner of BTC, Herskowitz would have received 104,000,000 coins in the ICO at $.28 or $.29 per coin, or approximately $30,160,000. Moreover, RVH, whose Note was convertible into a 10% ownership of BTC, was also damaged by Spanos fraudulent conduct because, as a 10% owner of BTC, RVH would have received 52,000,000 coins in the ICO at $.28 or $.29 per coin, or approximately $15,080,000.

### III. Subject Matter Jurisdiction and Venue

Plaintiffs allege diversity jurisdiction under 28 U.S.C. § 1332(a)(1), as there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. BTC, which is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 157 Prince Street, New York, New York 10012, has sued for over $10,000,000, plus continuing post-judgment interest at the statutory rate. RVH is a corporation organized and existing under the laws of the State of Delaware and Herskowitz is a resident of the State of Florida. Third-party Defendant Spanos is a resident of the State of New York.

Venue is proper in this District under 28 U.S.C. § 1391. The Note, the Security Agreement and the Shareholder Agreement each contains a venue provision by which the Parties agreed that any action BTC brought arising out of those agreements would be brought in the federal courts located in the City of New York.

Defendants have not contested jurisdiction or venue, and have answered the Complaint and filed a third-party complaint in the Action.

### III. Motions

There are no outstanding motions, or requests to file motions.

### IV. Discovery

Discovery has not yet taken place in the Action. Admissible and material evidence relating to all allegations and defenses raised in Plaintiff's Complaint and Defendants' Answers, Counterclaims and Third-Party Complaint includes, but is not limited to: (1) documents and communications, if any, by, between and among the Parties concerning the negotiation of and the execution of the Loan, the Note, the Security Agreement and the Shareholder Agreement; (2) documents and communications concerning RVH's failure fully to fund the Loan; (3) documents and communications concerning the purported default under the Note and Defendants' efforts to hold a public auction of BTC's assets; (4) documents and communications among any of the Parties and Global concerning the Reverse-Merger transaction and Global's failure to consummate the transaction; (5) documents and communications concerning RVH's or Herskowitz's direct or indirect ownership interest in Global; (6) documents and communications

between and among the Defendants regarding their intention to consummate the transaction, pay off the Loan or facilitate the exchange of Herskowitz's BlockChain shares for Global shares, and efforts to deceive Spanos, induce BlockChain to enter into the Loan and Global's efforts to assist Herskowitz to obtain equity in BlockChain; and, (7) documents evidencing the value of BTC, its assets and the damage inflicted by RVH's failure fully to fund the Loan.

The Parties will exchange, and respond to, discovery requests, meet and confer with each other concerning the scope of those requests and produce documents, including electronically-stored information ("ESI"), in single-page tagged image file format, together with fully searchable optical character recognition, all metadata and a corresponding Concordance load file for use with each of the Parties' document review platform.

The Parties will submit to the Court a proposed Stipulated Protective Order for the preservation of the confidentiality of documents and information deemed by any of the Parties to contain confidential personal information, trade secrets, personnel records or commercial information. The proposed Order will include provisions stating that inadvertent disclosure during the course of discovery does not constitute a waiver of privilege.

**V.      Settlement**

Counsel for the parties briefly discussed settlement by telephone around November 30, 2018, shortly after Defendants filed their responsive pleadings in the Action. The Parties are far apart at this time, but remain open to discussing settlement.

**VI.     Trial**

The Parties estimate that trial will take approximately 10 court days to conclude.

Respectfully submitted,

Peter R. Ginsberg

cc:     Alan A. Heller