

100 Wall Street
20th Floor
New York, NY 10005

Main: 212.431.8700
Fax: 212.334.1278
foster.com

Direct Phone: 212.965.4526
alan.heller@foster.com

October 26, 2020

**Via ECF**
Magistrate Judge Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

     Re:    *Blockchain Technologies Corporation v. RVH, Inc. (Case No. 1:18-cv-09352(AJN))*

Dear Magistrate Judge Netburn:

     We are counsel to defendants/third party plaintiffs RVH, Inc. and Robert Herskowitz ("Defendants"). Your Honor is fully familiar with the struggle we have endured to obtain meaningful document discovery from the Plaintiff and Counterclaim Defendants' (collectively, the "Plaintiff"). The purpose of this letter is to request that Your Honor strike the Plaintiff's Answer and Reply to Defendants' counterclaims on the grounds that Plaintiff has perpetrated a fraud on the Defendants and this Court by, among other things, lying about their relationship with the Synapse Foundation d/b/a zap.org (for which virtually no discovery has been provided) and their outright theft of corporate assets and opportunities which was revealed for the first time in Plaintiff's latest production (**19 months after** requests had been served for such discovery). It is no wonder why the Plaintiff resisted turning over these damning documents.

     Even more infuriating is our independent discovery **last week** that the Synapse Foundation, in the name of Zap and in conjunction with Spanos and The Bitcoin Center, are actively operating a Bitcoin Center in New York City on 83rd Street. Attached hereto as **Exhibit W** are pictures that were taken on Tuesday showing the front window of the 83rd Street store front location and fixtures therein including, but not limited to, ATM machines that are, used to be or should be assets of BTC. The problem with this is as follows: (i) Neither the Plaintiffs nor their counsel ever disclosed this information to the Defendants (or produce a lease or license agreement or other documents relating thereto) despite demands for such and this information would have still been hidden from us but for the fortuitous fact that an individual with knowledge of this issues in this case walked by the location; and (ii) Spanos, Synapse and their counsel all represented to this Court in their motion dismiss on jurisdictional grounds that Synapse (d/b/a zap) is an Isle of Man entity with a "dearth of New York connections." Enough is enough!

Magistrate Judge Sarah Netburn
United States District Court
October 26, 2020
Page 2

Accordingly, in addition to the dismissal of Plaintiff's complain and Reply to Defendants' Counterclaims, BTC, Spanos and Synapse should be sanctioned and that Defendants be awarded the attorneys' fees they were forced to incur in their chase for the documents and information they were entitled to from the outset of discovery.

There are additional reasons for this relief. In response to Your Honor's Order of September 9, 2020, we received approximately 8,500 additional pages of documents and an alleged privilege log – meaning that Plaintiff (and, in particular, Spanos) had access to these documents the entire time but forced our clients to waste thousands of dollars to compel their production.[1] Although an inordinate amount of the production included multiple copies of the same documents (counsel clearly did not dedupe the production before serving it on Defendants' counsel) and hundreds of pages of recycled production from documents previously delivered by the Defendants to Plaintiff's counsel from responses Defendants' counsel received via subpoenas served on Plaintiff's banks and accountants,[2] we finally received, for the first time, relevant emails and company documents.[3] What these documents reveal is astonishing.

1. **The Theft of Plaintiff's Patents and Patent Applications**. It is now apparent why the Plaintiff entity ("BTC") and Mr. Spanos resisted producing any documents regarding BTC's Patents. On August 3, 2018, a few months prior to Plaintiff's commencement of this Action, and after the Defendants had served a notice of their intention to sell the Patents in a public auction which was

---

[1] Other than as set forth herein, there are still numerous categories of documents that are missing.

[2] Plaintiff did not add any financial documents to the regurgitated production of their accountant's documents and the subpoenaed bank records. We have still not received any BTC K-1s for 2015, 2016, 2017 and 2018, we have still not received any financial records backing up the revenues from 2017 and 2018, we have still not received backup for the expenditures from those years, we have not received any information regarding the payments the bank records indicate Mr. Spanos made to himself, we did not receive any records regarding well over $100,000 delivered by third parties to BTC before BTC divested itself of its assets in September, 2018 (see below), and we did not receive copies of checks written on the BTC accounts or evidence of the monies coming in to the accounts (i.e., whether they were investments or revenues). Moreover, although Mr. Spanos testified about work BTC performed for the Synapse Foundation (and a document was produced with an invoice for that work), no evidence was produced regarding the payment of the invoice or the source of such payments. All Plaintiff did vis-à-vis the production of additional bank and financial records was to copy the same papers we provided them from the subpoena responses.

[3] Also missing from the produced documents are any zap business and transactional documents (see below) and the Company Disclosure Schedule that should have been annexed to the previously produced Agreement and Plan of Merger dated May 19, 2015 between Plaintiff and a public company named Global Arena Holding, Inc. This should have been retrieved by Plaintiff; it is not our job to subpoena their counsel or GAHI to get it. That Schedule has, among other things, admissions regarding (i) the shareholders of BTC; (ii) the outstanding notes and obligations that are convertible into shares of BTC's common stock; (iii) BTC's material contracts; (iv) BTC's intellectual property; (v) audited financial statements; (vi) BTC's liabilities, and much, much more. Put another way, the most important document from the GAHI merger document – a document that acknowledges the debt to RVH, acknowledges Herskowitz's ownership interests in BTC (which BTC now says is equal to 0) and acknowledges RVH's option to purchase more shares in BTC -- has been withheld. That this document has still been left out of this document production is inexcusable.

Magistrate Judge Sarah Netburn
United States District Court
October 26, 2020
Page 3

postponed on the eve of the public sale because Spanos agreed to pay off the debt in its entirety within an agreed upon time period (but ultimately reneged on that deal), **Plaintiff assigned its patents to a new entity named Blocktech, LLC** – an entity owned 60% by Mr. Spanos, 20% by his alleged in-house attorney Eric Dixon and 20% by Asterios Geros for a bogus purchase price of $100,000 payable in $10,000 semi-annual installments over a period of 4 ½ years. See **Exhibits A and B** hereto. Thus, despite the fact that RVH owned 20% of BTC and had a recorded UCC-1 showing a security interest in those assets (see **Exhibit C** hereto), Mr. Spanos and his cohorts believed they could unilaterally strip BTC of two of its most valuable assets.[4] Upon information and belief, they have also stripped the company of all of its other assets that had been previously assigned to BTC in November, 2016 (See **Exhibit D** hereto)[5] and company cash in the tens of thousands of dollars, if not more, as evidenced by wires from BTC to Nick Spanos after this action was commenced (see **Exhibit V** hereto showing wires from BTC to Nick Spanos in the aggregate amount of $25,200 during a nine day period between January 23, 2019 and January 31, 2019). **Without even addressing any of the additional issues in this letter, it is respectfully requested that this Court Order that the stripped assets including, but not limited to, the Patents stolen on August 3, 2018, be immediately returned to BTC.** In the alternative, leave should be granted to the Defendants to make a motion for that relief.

What makes this theft even more outrageous is that it would have never been discovered had we not come back to Your Honor time and time again, at significant expense and angst to the Defendants, with complaints about the lack of production of documents in response to our document demands.

2. **The Synapse Foundation/Zap.org Lie**. Throughout our battle to obtain meaningful discovery of The Synapse Foundation d/b/a zap.org, Mr. Spanos and his prior counsel argued that Mr. Spanos and BTC no longer had anything to do with zap.org and had no access to their business, financial and transactional documents – even though counsel actually represented The Synapse Foundation in this action. They also testified during depositions and represented in open court that others, whose names Mr. Spanos somehow could not recall, ran this "Isle of Man" entity. **Based on the document we have now just received, this is an outright lie and a fraud on this Court**. Not only has Mr. Spanos been intricately involved in The Synapse Foundation d/b/a zap.org through his new entity Blocktech, LLC, the recently produced documents reveal that he has a whole team of current and former BTC/Bitcoin Center colleagues who have participated in and currently participate with him in this venture including, but not limited to, his in-house counsel Eric Dixon (see **Exhibit E** where Mr. Dixon signs an email as

---

[4] That they only put a $100,000 value on these Patents is an outrage; and if that was somehow the true value at that time, Defendants, who have a security interest in these assets, would have surely considered a credit to BTC for that $100,000 amount and a 3% royalty fee to BTC in exchange for full ownership of those Patents. But this was never proposed to Defendants because BTC, Spanos, Dixon and Geros hoped that their dilatory discovery tactics would wear the Defendants out so that their theft would go undetected.

[5] Our limited financial discovery in this case has shown that Mr. Spanos pays no attention to the fact that he, as the fiduciary running a company into which hundreds of thousands of dollars have been invested by third parties, cannot take company assets for himself. While we have not been given access to the full picture, bank statements reveal that tens of thousands of dollars were wired to Mr. Spanos from the BTC account at and around the same time the company was being stripped of its assets. See **Exhibit V** hereto.

Magistrate Judge Sarah Netburn
United States District Court
October 26, 2020
Page 4

"Part owner and legal advisor Blocktech LLC, Blockchain Technologies Corporation and Zap.org). Buttressing Spanos' lies are the following recently produced emails:

- **Exhibit F**. Identifying a meeting being called by Kelvyn Hernandez of Blocktech with a subject line that indicated that it was an "invitation: **Zap General Meeting** @ Tue Feb 5, 2019" (emphasis supplied). Invited to that meeting were 10 individuals affiliated with "Blocktech, LLC" – the entity that had recently stolen the BTC patents – including, but not limited to, Nick Spanos. Also included in this invite were Hamdan Azhar, an individual whose email signature indicates he is the "Director of Growth & Partnerships, Blocktech, Lead Data Scientist, Zap.org and Founding Member of, Bitcoin Center NYC" (see **Exhibit G**), and Peter Mikkelsen, an individual whose signature line indicates that he is the "Director of Business Development & Partner Blockchain Technologies Corp." – the Plaintiff in this action (see **Exhibit H**).

- **Exhibit I**. Identifying another meeting called by Mr. Hernandez with a subject line that indicated that it was an "Invitation: **ZAP, Real Estate, Legal Structure** @ Tue Dec 18, 2018" and whose invitees included BTC's in-house counsel Eric Dixon and Nick Spanos.

- Attached to the Mikkelsen **Exhibit H** email and in another email from him (**Exhibit J** hereto), were contracts for both **Blocktech and Synapse**. Spanos **was the signatory** to the Synapse agreement annexed as **Exhibit J** hereto.

But this proof notwithstanding, Plaintiff and Mr. Spanos still feign a lack of access as an excuse for Plaintiff's continued inexplicable failure to produce Synapse/zap.org organizational, ownership, contractual and transactional documents. This is a sham. Other recently produced emails clearly show that the "Blocktech, LLC" cohorts, including Mr. Spanos, run Synapse and zap.org. See **Exhibits K, L, M, N, O** (where Spanos is asked for zap's "private key"), **Exhibit P**, **Exhibit Q** (which Spanos admits he has "a project called zap.com"), **Exhibit R** (which attaches a combined NDA for Blochtech and Zynapse), and **Exhibit S** (which attaches and delivers to Spanos and Dixon business models for zap). Put another way, Plaintiff, Mr. Spanos and Mr. Dixon hid the fact that **they are zap.org** and actually swore otherwise! But for the fact that we did not give up and continued to chase for the production of emails we never would have known the truth.

Now we are seeing for the first time on the eve of a discovery deadline (and 19 months after discovery demands were served in this action) that there are a dozens of BTC, Bitcoin Center and Blocktech individuals intricately involved in Synapse and zap. But we have not received any zap formation, ownership or venture document or documents relating to the zap Initial Coin Offering (of, upon information and belief, approximately 100,000,000 coins that, at various times had a value of up to $.25 per coin) from which Mr. Spanos admits he received 5,000,000 coins.[6] Nor have we received any

---

[6] No documents were produced showing how and why Spanos received 5,000,000 zap coins, no documents were produced showing contracts for this consideration, no documents were produced showing who else from the Blocktech group received coins, and there is no documentation regarding the value of the coins when they were received (i.e., $.25 per coin is

Magistrate Judge Sarah Netburn
United States District Court
October 26, 2020
Page 5

documents regarding its New York store front operations and any operations in other U.S. cities. These are all documents that should have been produced and the failure to do so must not be countenanced by this Court.

3. **Other Business Opportunities**. The recently produced documents also reveal for the first time that Mr. Spanos and his cohorts have stolen other BTC business opportunities including, but not limited to, an opportunity named "Cryptos.com" (**Exhibit T** hereto), "Blockchain Center Europe" (**Exhibit U** hereto) and the Bitcoin Center he opened for himself in Florida under a company named Blockchain Center LLC.

If anything warrants the sanction of striking a pleading and an award of attorney's fees it is the conduct of the Plaintiff and Spanos in this action.

Should this Court not sanction BTC and Spanos as requested herein then, in the alternative, Defendants should be granted the following relief: (i) Leave to amend their counterclaims to (a) add Blocktech, LLC, Dixon and Geros, and other entities into which corporate opportunities have been stolen, as additional counterclaim defendants and (b) add a claims directing Spanos and his cohorts to restore the stolen assets to BTC; (ii) that Plaintiff, zap and Spanos be ordered to immediately turn over all Synapse and zap.org organizational, ownership, contractual and transactional documents including, but not limited to, ICO transactional documents and documents showing the distribution of coins to Spanos, Dixon and others affiliated with them, BTC, Synapse and Blocktech, LLC; (iii) that Plaintiff and Spanos be ordered to produce the Disclosure Schedules that were annexed to the GAHI plan of merger, all K-1's from BTC, all tax returns from Blocktech LLC, all financial information of BTC and Blocktech and the backups to the BTC 2017 and 2018 tax returns; and (iv) leave be granted to the Defendants to move at this time for partial summary judgment on its promissory note claim (against which no defense can be proven and, if granted, Defendants would be permitted to executed on the BTC assets which would effectively put an end to this litigation).

One more thing. Now that the truth has been revealed, we will need depositions of the Spanos cohorts including, but not limited to, Eric Dixon and Asterios Geros – the alleged co-owners of Blocktech LLC – and, upon receipt of the zap documents, others who revealed to be affiliated with BTC/The Bitcoin Center/zap.org/Blocktech. Accordingly, if the Complaint and Reply are not dismissed, it is respectfully requested that the discovery deadline be extended for a reasonable period of time so that we can receive and review additional produced documents and prepare for those depositions.

---

$1,250,000 worth of coins). **Given the track record of the Plaintiff and Mr. Spanos, documents clearly do exist but Spanos does not want to turn them over to the Defendants because they will further expose Spanos' theft of BTC assets**. Once again, we should not be expected to come to Your Honor time and time again to get documents that should have been produced a year and a half ago!

Magistrate Judge Sarah Netburn
United States District Court
October 26, 2020
Page 6

There are numerous other deficiencies in the Plaintiff's production. Should this Court not dismiss the Complaint and Reply at this time, we will address those issues in an additional letter to the Plaintiff's counsel.

We are available any day next week for a call with Your Honor except for Wednesday and Friday afternoon after 5:30 pm.

Respectfully submitted,

Alan A. Heller (AH-7942)

cc: Plaintiff's Counsel (via ECF)