# EXHIBIT B

NY_DOCS:615453.1 [99998.42025]

From: **"Eric Dixon (via Google Docs)"** ericdixonlaw@gmail.com
Subject: BlockTech: Operating Agreement and Members' Agreement
Date: November 27, 2018 at 12:34 PM America/Los_Angeles
To: Eric@blocktech.com

Eric Dixon has attached the following document:

📄 BlockTech: Operating Agreement and Members' Agreement

Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because someone shared a document with you from Google Docs.

Google

**Attachments:**
BlockTech Operating Agreement and Members' Agreement.pdf (68.62 kB)

BTC003183

## Operating Agreement and Members' Agreement for BlockTech LLC

**This Operating Agreement and Members' Agreement of BlockTech LLC, a Colorado limited liability company organized on May 31, 2018, is dated as of May 31, 2018 and pertains to BlockTech LLC and its members.**

WHEREAS, BlockTech LLC (the "LLC") was organized on May 31, 2018 to engage in all lawful activities; and

WHEREAS, the organizing members, managing members and members holding equity ownership in the LLC wish to set forth certain preliminary guidelines for the operations, governance and rights of the LLC and the members;

NOW, THEREFORE, the members signing below hereby agree as follows:

1. Full Force and Effect. This Agreement supersedes, revises and replaces any previous agreement governing the LLC. In the effect of any conflict between any previous or prior agreement governing the LLC and this Agreement, this Agreement shall control and govern the resolution of any such conflict.

2. Initial Governance. The LLC was initially organized by its organizer, Nikolaos Spanos, and the authority of Nikolaos Spanos to take that action and any such other actions to organize the LLC, file necessary administrative, corporate, tax and other such documents with any governmental body, authority or agency is hereby ratified, confirmed and approved in all respects.

3. Board of Members.

    a. The LLC shall hereafter be governed by a "Board of Members" which shall consist of at least three and no more than five members. Each member of the Board of Members shall be a Co-Managing Member and a Member of the LLC.

    b. Unless a resolution of the board specifies otherwise, the voting rights of the members on the board shall be equal.

    c. The approval of a majority of the voting rights held by the members of the board shall be needed on important matters involving the LLC such as any merger of the LLC with another entity, acquisition of another entity by the LLC where the LLC is the surviving entity, any material acquisition of another entity or asset whereby the LLC would incur substantial indebtedness or other legal liability, and the dissolution, bankruptcy or other termination of the LLC.

1

Members' Initials NS_____ AG _____ ED_____

d. Such approval shall be made either by voice vote or paper vote at a meeting of members of the board, or by written consent properly verified and notarized prior to the meeting, or a written consent ratifying such vote after any such meeting, or written consents in lieu of a meeting.

e. In any transaction between the LLC and a related party entity or affiliate which is either also a Managing Member or Member, the authorized signatory for the LLC shall be a Managing Member who is not a related party or affiliate in said transaction, such that the transaction is not effected by an agreement where the same natural person signs for both the LLC and the related party entity or affiliate.

4. Members.

a. Each Member shall be a holder of equity membership interests ("Membership Interests") denoting ownership in the LLC, and unless otherwise specified herein, shall have the rights to vote in any meeting or on any matter requiring the approval of the Members with such voting rights equal to each Member's proportionate ownership expressed as a percentage of the total then-outstanding Membership Interests.

b. The approval of 60% of all outstanding Membership Interests shall be required for any action for which Board approval is also required (see 3.c. above), any change in the primary industry or economic activity of the LLC, to increase or decrease the size of the Board, appoint any officers other than the Initial Officers, increase the number of authorized Membership Interests, cancel any previously-authorized but unissued Membership Interests, issue any previously-unissued Membership Interests, redeem and/or cancel any outstanding Membership Interests, or create any classification of Membership Interests.

5. Membership Interests; Rights to Distributions and Income.

a. General. Membership Interests represent equity ownership in the LLC. Unless otherwise specified, all distributions of net income and gains on any disposition, liquidation or monetization of any asset, and allocations of net losses and losses on any disposition, liquidation or monetization of any asset, shall be made in accordance with each Member's respective equity ownership percentage as expressed by the issuance of Membership Interests. Such Membership Interests shall be issued either by the effect and operation of this Agreement without further action being required, or as amended, or by issuance of a validly-signed, duly-authorized Membership Interest certificate signed and delivered by at least two board members who are also officers.

b. The initial number of Membership Interests ("Initial Interests") authorized shall be two hundred (200) and the initial number of authorized Membership Interests

2

Members' Initials NS_____ AG _____ ED_____

issued as of the date of formation is one hundred (100), distributed as follows to the following Members (who for purposes of this Agreement shall be "Initial Members"):

| Recipient | Mem. Interests | Percentage (%) | Voting Rights (%) |
|---|---|---|---|
| Nick Spanos | 60 | 60% | 60% |
| Asterios Geros | 20 | 20% | 20% |
| Eric Dixon | 20 | 20% | 20% |
|  |  |  |  |
|  |  |  |  |

6.  Initial Members.

a.  The Initial Members identified and listed in Section 5 above shall have priority rights as to the purchase of any new Membership Interests or any "derivative" security exchangeable into, transferable for or convertible into Membership Interests, the redemption (or buyback) of any previously outstanding Membership Interests, the purchase of any outstanding Membership Interests which Members wish to sell, or the sale of any outstanding Membership Interests if Members wish to buy additional Membership Interests, or any significant business opportunity which, in the opinion of the Board, requires a capital contribution by the Members and which has been previously approved by the requisite percentage of Members and of the Board.

b.  The priority rights shall consist of a "first round" right of first refusal to participate in any such transaction described in subparagraph a. above. The right of first refusal means the right to participate, in accordance first with each Initial Member's Membership Interest as a percentage of all Initial Members' Membership Interests, in any such transaction.

c.  Only after all Initial Members have either exercised or declined their right of first refusal shall such participation or sharing rights be extended to the Members at large. In this event, the right shall be exercisable in a "second round" by each Member (including Initial Members) with each Member's Membership Interest as a percentage of all Members' Membership Interest. After this "second round" has been exhausted and any and all Members have exercised or declined their right of first refusal, any remaining portion of said transaction shall be made available in a "third round" but only to Members who fully exhausted their right in the second round, and then only on the basis of the proportion of each third-round-electing Members' Membership Interests to the total Membership Interests of only the remaining Members so interested.

3

Members' Initials NS_____ AG _____ ED_____

       d.       The operation of this Section means that no Membership Interests may be sold, transferred, pledged or otherwise encumbered to any third party (i.e., any non-Member) for any reason (except by operation of a court order issued by a court of appropriate and final jurisdiction) without, unless and after the other Members have had a full opportunity to exercise their rights under this Section.

       e.       Any transaction potentially triggering the operation of this Section shall be described to the other Members in a writing, delivered to each other Member either at a known business or residence address or to an email address known to be currently operating no fewer than 15 days before the date of the proposed transaction (or such notice may be waived by the waiving Member, in writing).

7.       Miscellaneous

       a.       Amendment. This agreement shall not be amended except by an executed agreement signed and delivered by both parties.

       b.       Severability. Any waiver or invalidation of any right, provision or privilege hereunder shall not waive or invalidate any other right, provision or privilege in this Agreement.

       c.       Full Authority. The parties hereto hereby represent and warrant that they have the right, title and authority to execute, deliver and perform this Agreement and all actions and undertakings required or promised herein and are not now subject to any order, decree or other agreement or condition which would negate their assent or otherwise invalidate any section of this Agreement.

       d.       Dispute resolution. In the event of any dispute, the parties elect to rely upon the laws in force in the State of New York and agree to resolve any disputes in the state and federal courts located in New York, New York, United States and using the law applicable therein.

4

Members' Initials NS_____ AG _____ ED_____

IN WITNESS WHEREOF the parties hereto hereby agree to be bound as of this 31st day of May, 2018.

_____
NIKOLAOS SPANOS

_____
ASTERIOS STEVE GEROS

_____
ERIC DIXON

5

Members' Initials NS_____ AG \_\_\_\_\_ ED_____