# EXHIBIT J

NY_DOCS:615453.1 [99998.42025]

From: **Peter Mikkelsen** peter@blocktech.com
Subject: CONTRACT_ELEN_SIGNED_20190313.pdf
Date: March 13, 2019 at 7:48 AM America/Los_Angeles
To: Nick Spanos nick@blocktech.com, Eric Dixon eric@blocktech.com
Cc: Elen Mikayelyan elen@blocktech.com



Signed contract attached

All the best

**Attachments:**
CONTRACT_ELEN_SIGNED_20190313.pdf (2.69 MB)

## Service Agreement
## No. 01

Yerevan                                    February 18, 2019

«**Synapse Foundation**" Baarerstrasse 14-16, 2nd floor 6300, Zug Switzerland /hereafter Client/, representative director Nick Spanos, who is acting according the Statute of the Company, in one hand, and Citizen of **RA Elen Mikaelyan** /hereafter Provider/ /ID: 008526147, issued in 14.10.16 by 010, address: Yerevan, Vardanants street 22, ap. 82/, in other hand /together named Parties/, formed this service agreement /hereafter Agreement/ according to the Civil Law of RA.

### 1. GENERAL CONDITIONS

**1.1.** This agreement regulates work relationships between the Parties, states rights and obligations of the Parties and their responsibilities.

**1.2.** With this Agreement Provider obliged to do work designed in this Agreement with respect of terms and conditions decided by Client and Client is obliged to pay Provider for this work.

### 2. SUBJECT of AGREEMENT

**2.1.** Client hires Provider for the services of Business Analyst.

**2.2.** The main tasks for the Provider are:
- Administration,
- Regulation of all activities within organization and increase their efficiency for company,
- Event organization and coordination.
- To do any command, order or decision related to the function of the provider from the appointed manager of the Director, in this case Peter Gelardi Mikkelsen, Director of business Development and directly subordinate to the orders of the manager.

**2.3.** The place of the work is the one sited by the Client.

### 3. RIGHTS and OBLIGATIONS of the PARTIES

**3.1.** The Client had a right to:

BTC003672

3.1.1. to request from the Provider to do her work obligations on time and in right manner.

3.1.2. to define main conditions of Provider's work, deadlines, order and give tasks to be done.

3.1.3. Request from the Provider to do tasks not designed by current Agreement according the Legislation of RA and other Laws.

3.1.4. In the case of change of production volumes and (or) economic and (or) technological and (or) labor conditions, to modify the essential conditions of work.

3.1.5. In the manner prescribed by law, to subject the Provider to material responsibility, if she caused Material Damage to the Client.

3.1.6. To carry out any other right designed by the Civil Law, the Client's internal regulations and current Agreement.

**3.2. Client obliged to:**

3.2.1. Provide the Provider with the tasks provided by the Agreement and to organize its work, ensure safe and healthy working conditions.

3.2.2. Pay the Provider's salary within the time and under the terms stipulated by the current Agreement.

**3.3. Provider has a right to:**

3.3.1. receive a remuneration for the work performed within the timeframe and in the prescribed amount provided by the Agreement,

3.3.2. obtain information and explanations on the issues related to her activities, submit relevant documents and materials to the Client,

3.3.3. without prejudice to the terms and conditions provided by the Agreement, Client's internal regulations, other legal acts adopted by the Client, to work in other company,

3.3.4. submit proposals to the Client on the organization of his work,

3.3.5. get acquainted with the internal and individual legal acts of the Client which are directly related to her work.

**3.4. Provider obliged to:**

3.4.1. faithfully fulfill the obligations undertaken under the Agreement, as well as the Client's instructions arising from the Agreement and / or the Client's internal disciplinary rules and / or other internal and individual legal acts,

3.4.2. maintain the Client's internal disciplinary rules, work discipline and do not allow working regime violations, perform working norms, maintain labor protection and safety requirements, as well as Provider's ethics rules,

3.4.3. respect the property of the Client and other workers, as well as immediately inform the Client about possible

BTC003673

dangers of the Client's property protection, the life and health of the workers,

3.4.4. ensure the protection of any confidential information she is aware due to her work, otherwise she will face a penalty.

3.4.5. execute its duties personally and to instruct the other person in labor relations with the Client only with the permission of the Client,

3.4.6. in case of temporary disability, inform the Client on the same day personally or person affiliated with her,

3.4.7. execute the law, other legal acts, internal disciplinary rules and other obligations prescribed by the current Agreement.

## 4. DURATION OF AGREEMENT

4.1. The Agreement enters into force on 18.02.2019 and operates 6 months.

4.2. The Agreement can be terminated any time with 21 days notice if there is a no need for services with forming final act on the services done.

## 5. SALARY CONDITIONS

5.1. The wage rate of a salary **is $ 105 per week**, which at the moment of signing the Agreement amounts to **51,100 /fifty-one thousand/ AMD** according to the CBA rate. /not include taxes/

5.2. The wage is calculated every month and paid to the Provider at least once a month before the 15th day of the next month following the performance of the stipulated by law. The Client may pay a monthly salary at more than one time, divide it within a month.

5.3. Salary will be paid in cash, with bank transfer or via digital assets to the bank account or wallet of the Provider.

5.4. The work done by the Provider exceeding the working time specified in the Agreement shall not be considered overtime work.

5.5. The period of idle time and strike that arises as a result of force majeure, as well as by the Provider's fault in the manner prescribed by the RA legislation, shall not be subject to payment.

5.6. In case of termination of the Agreement, the Client shall make a complete settlement with the Provider by the date of the Agreement termination. The Client pays the wage to the amount of services Provider has performed by the day of the final settlement.

## 6. RESPONSIBILITY of the PARTIES

BTC003674

**6.1.** The Parties bear responsibility for non-fulfillment or improper fulfillment of their obligations under the general procedure defined by the Swiss legislation.

**6.2.** In case of inflicting material damage to the Client as a result of non-performance or improper performance of her job duties, the Provider shall be subject to disciplinary, material and other liability in the manner prescribed by the current legislation of the country of Switzerland. Material liability arises when the Provider fails or improperly performs her obligations.

**6.3.** Payment of penalty does not relieve the Parties from the fulfillment of their obligations under the Agreement.

## 7. DISPUTE RESOLUTION

**7.1.** In case of a dispute between the parties, it shall be subject to resolution through direct negotiations between the Client and the Provider.

**7.2.** If the dispute between the parties is not settled, it shall be subject to judicial review in the manner prescribed by the Swiss legislation.

## 8. FORCE-MAJOR

**8.1.** The Parties shall be exempt from liability if it was the result of an force-major that arose after the conclusion of the Agreement and which the Parties could not anticipate and / or prevent. In the event of a force majeure, the Party whose obligation will discharge the force majeure is obliged to inform the other Party immediately.

## 9. Nondisclosure of Confidential Information:

9.1     The term "Confidential Information" means all financial and other nonpublic information, notes, analyses, compilations, third party contacts, clients, investors, studies or other documents provided by the parties to one another during the Discussions, including any propriety information concerning their respective businesses, operations, assets, trade secrets, techniques, models, data, code, research, processes, procedures, business strategy, marketing, pricing, financial data and other such information, whether or not reduced to writing or other tangible form and whether or not expressly designated "Confidential". All such information if disclosed during the Discussions shall be deemed confidential, unless the disclosing party expressly designates as "Not Confidential".

9.2     Confidential Information shall not include (i) information already and lawfully known prior to being obtained during the Discussions; (ii) information that can be demonstrated by clear and convincing evidence to have been in the public domain at the time of disclosure; and (iii) information approved for release by written authorization of an authorized officer of the Disclosing Party.

BTC003675

9.3    Should only a portion of any Confidential Information fall within the scope of Section 1.2, all other Confidential Information so disclosed shall remain within the scope of Section 1.1 and subject to the prohibitions set forth below.

9.4    Each party will use any Confidential Information it might receive during the Discussions solely to evaluate the prospective commercial relationship contemplated between them. Both parties shall hold all such Confidential Information in strict confidence, except to the extent permitted by Paragraph 1.6 below. Neither party shall reverse engineer, disassemble or decompile any prototypes, software, or other objects conveyed hereunder. Each party shall use a standard of care and discretion to avoid releasing Confidential Information received during the Discussions not less than that which it accords it's own propriety and/or trade secret information.

9.5    Confidential Information may be disclosed internally by either party as may be necessary for the sole purpose of evaluating and negotiating the commercial relationship and/or transactions contemplated by the Discussions. Disclosure may also be permitted for that purpose to either party's accountants, attorneys, consultants, affiliates, directors and officers, on a need to know basis. All such persons shall be informed of the information's confidential nature, and required to maintain it in accordance with this agreement.

9.6    Should either party be legally required (i.e. by subpoena or other legal process) to disclose Confidential Information imparted to it, that party shall promptly notify the other party so that the disclosing party may:  (i) seek a protective order or other appropriate remedy; or (ii) waive compliance with this Agreement as to the Confidential Information sought to be revealed.  Absent a protective order, if the receiving party is still in the written opinion its counsel legally required to disclose Confidential Information, it shall; (i) again notify the other party; (ii) furnish only so much of the Confidential Information as is legally required; and (iii) use best efforts to obtain reliable assurance that the Confidential Information will be treated confidentially.  Neither party must risk citation for contempt or other judicial penalty in any such situation if the disclosing party fails or is unable to timely intervene.

9.7    Except as permitted herein, for thirty six (36) months after conclusion of the Discussions, neither party shall disclose to any person that Confidential Information has been made available, that Discussion of negotiations are taking place or have taken place, and/or any of the terms, conditions or other facts with respect to a potential commercial relationship between them.

9.8    Confidential Information disclosed hereunder shall at all times remain the property of the disclosing party.  Immediately upon request by either party, both parties shall return or destroy all documents or tangible forms of Confidential Information received hereunder.  Any confidential Information transmitted orally shall

BTC003676

remain subject to all restrictions set forth herein. The parties shall not retain any copies, extracts or other reproductions of any Confidential Information, and shall destroy all notes, memoranda and other writings in their possession based on any Confidential Information received.

9.9 Neither party makes any representation or warranty as to the accuracy or completeness of any Confidential Information disclosed hereunder, including but not limited to freedom from any claim or patent, trademark, and/or copyright infringement resulting form the use of such information.

## 10. Non-Circumvention

10.1 Commencing with the date of this Agreement and continuing for four (4) years following conclusion of the Discussions (the "Non-circumvention Period"), neither party shall solicit any kind of business from any existing supplier, client, contact, investor or strategic partner of the other party, with whom that party enjoys a business relationship, in order to (i) circumvent the relationship between that party and its supplier, customer, investor, client and/or contact, (ii) cause the revocation or termination of that relationship; or (iii) otherwise compete with one another; without prior written authorization.

## 12. FINAL PROVISIONS

a. When signing the Agreement, the Provider is familiar with working conditions, disciplinary rules of the Client.
b. Changes and additions to the current Agreement can be made solely by the Client in writing form. These amendments and supplements shall be enclosed to the current Agreement and shall constitute its integral part. In case of disagreement between the Parties them, the Worker may terminate her Agreement.
c. The issues not stipulated by the current Agreement are being regulated by the procedure established by the Swiss legislation.
d. The Agreement express consent of the Parties and has precedence over all previous oral and written agreements and contracts.
e. None of the Parties may disclose the terms and conditions of the Agreement without the prior consent of the other party, except in cases prescribed by law.
f. The Agreement may be resolved in the cases and in the manner prescribed by the Swiss civil law

BTC003677

| 1. ԿՈՂՄԵՐԻ ՎԱՎԵՐԱՊԱՅՄԱՆՆԵՐԸ ԵՎ ՍՏՈՐԱԳՐՈՒԹՅՈՒՆՆԵՐԸ | 13. REQUISITES AND SIGNATURES OF THE PARTIES |
|---|---|
| **ՊԱՏՎԻՐԱՏՈՒ**<br>«**Մուրցի Հոլդինգ**» ՍՊԸ<br>/ՀՎՀՀ` 00476529/<br>Ի դեմս` ՓԻՐԻՐ ԳԵԼԱՐԴԻ ՄԻԿԱԵԼՅԱՆ<br><br>/ստորագրություն/ | **CLIENT**<br>«Synapse Foundation"<br>Director Nick Spanos<br><br>/signature/ |
| **ՄԱՏՈՒՑՈՂ**<br>ՀՀ քաղաքացի **Էլեն Միքայելյան**<br>Նույն. քարտ` 008526147, տրված 14.10.16թ.-ին<br>010-ի կողմից,<br>հասցե` ք. Երևան, Վարդանանց փ. շ.22, բն. 82<br>UNIBANK: 24100374166704<br><br>/ստորագրություն/ | **PROVIDER**<br>**Elen Mikaelyan**<br>ID: 008526147, issued in 14.10.16 by 010, address:<br>Yerevan, Vardanants street 22, ap. 82<br>UNIBANK: 24100374166704<br><br>/signature/ |

BTC003678