# EXHIBIT R

From: **Kevin Hu** kevin.y.hu@hotmail.com
Subject: NDA
Date: December 11, 2018 at 9:12 AM America/Los_Angeles
To: "eric@blocktech.com" eric@blocktech.com

Hi Eric,
Please see the attached.

Thanks,
Kevin

**Attachments:**

NDA_Blocktech.Technologies.Corporation_Synapse.Foundation[13403].pdf (1.5 MB)

## NON-DISCLOSURE, CONFIDENTIALITY and
## INFORMATION PROTECTION AGREEMENT

This Nondisclosure, Confidentiality and Information Protection Agreement ("Agreement") is made as of and effective this __11th__ day of ___December___. __2018___ by and between, on the one hand: (i)(a) **Blockchain Technology Corporation**, a New York corporation, its subsidiaries, affiliates and assigns; and (b) including a to-be-formed entity intended to be named **Synapse Foundation** and formed under the laws of Isle of Man (each as well as collectively for sake of simplicity, a "Disclosing Entity"), on the one hand, and:

(ii) _____Kevin Hu_____, (individual / corporation ) with a (residence / business) address in _____Toronto, Canada_____ ("Recipient"), on the other hand.

WHEREAS, the Recipient and the Disclosing Entity jointly contemplate that Recipient shall be engaged by the Disclosing Entity to develop, conceive, market, promote or otherwise commercialize various concepts, data or intellectual property constituting the Confidential Information, as defined below; and

WHEREAS, the parties hereto may enter into a separate working agreement providing for Recipient to be either an agent, consultant or employee of or to the Disclosing Entity, but as to which no such offer has been made and is presently only contemplated;

NOW, THEREFORE, for consideration the receipt of which is hereby acknowledged, the parties hereto, hereby agree as follows:

1. Confidential Information.

A. The Disclosing Entity proposes to disclose certain of its confidential and proprietary information (the "Confidential Information," as defined below) to Recipient in the course of the commercial working relationship between the Recipient and the Disclosing Entity.

B. "Confidential Information" shall include all: data, materials, products, technology, computer programs, machines, manufacturing or assembling systems, compositions of matter of any type, designs, schematic renderings, techniques, specifications, patents, trademarks, service marks, trade names, trade secrets, mask works, ideas, concepts, any applications, work papers or white papers received, granted, awarded, licensed or made in connection with or preparation for any application for patents, trademarks, tradenames or service names or trade secrets or in contemplation of litigation regarding same, manuals, business plans and strategies, software, computer codes, source codes, object codes, computer protocols, software protocols, processes, formulae, calculations, algorithms, mathematical equations or concepts, cryptographic systems, systems, findings, conclusions, theories, improvements, discoveries, analyses, developments, methods, marketing plans and strategies, financial information,

licenses, pricing and customer information, cost information, margin information, business operations, business policies, strategies, information pertaining to competitors of the Disclosing Entity or potential business partners or employees of the Disclosing Entity, information regarding any personnel, consultants or employees of the Disclosing Entity including their skills, experience, prior employment and compensation, and other information disclosed, submitted, made accessible or available to or otherwise shared with whether in final, revised or draft form, and whether verbally or orally, in writing or printed form or by any other media, to Recipient (or any agent, affiliate or associate of Recipient) by the Disclosing Entity. Confidential Information shall also include any of the foregoing which may pertain to prospective or unannounced products, systems, methods or other knowhow, plans for or subject to such plans for research or development, regulatory approval or applications or petitions for such approval,

C. Any of the following: an invention, whether patented or unpatented or subject to a pending patent application, trade secret, concept or other subject matter which, if confidential under this Agreement would be included in the definition of "Confidential Information," which Recipient has made, created or conceived prior to the commencement of Recipient's services to or relationship with the Disclosing Entity (any of the foregoing, "Prospective Personal IP" or "PPIP"), and which Recipient wishes to exclude from the scope of this Agreement, must be disclosed in an attachment hereto prior to execution. Such attachment must list any PPIP which Recipient claims to have or caused to have conceived of, developed or reduced to practice, prior to the commencement of any services to the Disclosing Entity, and which Recipient claims to be either Recipient's property or the property of third parties and further wishes to have excluded from the scope of this Agreement. If Recipient does not attach an attachment with any such wished or desired exclusions, Recipient will thereby represent and warrant to the Disclosing Entity that Recipient has and claims no such PPIP.

D. If during the course of Recipient's services with or for the Disclosing Entity, Recipient incorporates (whether intentionally, accidentally or tangentially) PPIP into any product, system, method, process, machine or other subject matter of a nature or category enumerated in this section, which if confidential would constitute Confidential Information, Recipient shall grant to the Disclosing Entity a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license including rights to sublicense, to make, modify, have made, use, develop, commercialize and sell such PPIP. Furthermore, Recipient agrees that Recipient will not incorporate, or permit to be or have incorporated, any PPIP into any Disclosing Entity product, system, method, data, item, process, machine or invention, without the Disclosing Entity's prior written consent.

E. Confidential Information disclosed orally shall be identified as such within five (5) days of disclosure. Nothing herein shall require the Disclosing Entity to disclose any of its Confidential Information at any time to Recipient. No disclosure hereunder shall act as a waiver of the Disclosing Entity's rights and protections under this Agreement.

2. Recipient's Covenants, Representations, Duties and Obligations.

A. Recipient agrees that the Confidential Information is to be considered strictly confidential, highly confidential and proprietary to the Disclosing Entity. Recipient acknowledges that the unauthorized use, disclosure or exploitation of the confidential information could cause irreparable and substantial harm to the Disclosing Entity. The Confidential Information need not be labeled or printed as confidential for these confidentiality obligations to arise and be assumed. Recipient shall hold the same in strict confidence, shall not use the Confidential Information other than for the purposes of its or his business with the Disclosing Entity or within the confines of a principal-agent, independent contractor or employer-employee relationship, and shall disclose it only to such other parties who have a specific need to know and upon prior written notice to and prior written approval of the Disclosing Entity. Recipient will not disclose, publish, broadcast, expose, disseminate, reveal or otherwise leave vulnerable or susceptible to misappropriation, any of the Confidential Information received from the Disclosing Entity to any other party whatsoever except with the specific prior written authorization of the Disclosing Entity.

B. Recipient represents and warrants to the Disclosing Entity that he is receiving the Confidential Information on his own behalf and not as an agent for or on behalf of any third party private or quasi private entity or corporation or government agency or entity. Recipient further represents and warrants that he/she is capable and authorized to execute, deliver and perform the obligations set forth under this Agreement, and is not subject to any restriction, injunction, contractual obligation or other encumbrance preventing, limiting or imposing conditions upon his or its execution, delivery and performance hereof.

C. Confidential Information shared, accessed or furnished in written, tangible or any other medium or form shall not be duplicated by Recipient except for the purposes of this Agreement. Upon the request of the Disclosing Entity, Recipient shall return all Confidential Information received in written or tangible form, including copies, or reproductions or other media containing such Confidential Information, within ten (10) days of such request. At Recipient's option, any documents or other media developed by the Recipient containing Confidential Information may be destroyed by Recipient. Recipient shall provide a written certificate to the Disclosing Entity identifying the Confidential Information destroyed, the time, date, place and manner of destruction and the description of the post-destruction products (e.g., proprietary report in printed form of paper binder, shredded fully at the date, time and place described herein) within ten (10) days thereafter.

D. Confidential Information shall be disclosed to Recipient in the course of the commercial or working relationship between the Recipient and the Disclosing Entity, or a contemplated relationship, as to which the terms of any such relationship shall be set forth in a separate agreement, and Recipient represents that he / she / it is receiving access to the Confidential Information only pursuant to or in furtherance of or in contemplation of such relationship.

E. Furthermore, the matters worked on by Recipient for or on behalf of the Disclosing Entity and any items produced, created, conceived or developed during such work, including data, materials, products, technology, computer programs, machines, manufacturing or assembling systems, compositions of matter of any type, designs, schematic renderings, techniques, specifications, patents, trademarks, service marks, trade names, trade secrets, mask works, ideas, concepts, any applications, work papers or white papers received, granted, awarded, licensed or made in connection with or preparation for any application for patents, trademarks, tradenames or service names or trade secrets or in contemplation of litigation regarding same, manuals, business plans and strategies, software, computer codes, source codes, object codes, computer protocols, software protocols, processes, formulae, calculations, algorithms, mathematical equations or concepts, cryptographic systems, systems, findings, conclusions, theories, improvements, discoveries, analyses, developments, methods, creations, derivations, materials, byproducts, concepts, products, or service manuals or practices, original works of authorship or creation or made by Recipient whether solely or with others in the course of Recipient's relationship with the Disclosing Entity, are "works made for hire" (as defined under the United States Copyright Act) and as such, are the exclusive property of the Disclosing Entity. Recipient disclaims, surrenders and releases any and all personal interest therein, and disclaims all ownership title, right or interest in any of the works made for hire, and conveys, transfers and assigns to the Disclosing Entity all of Recipient's worldwide rights, title and interest (including any intellectual property or trade secret rights) in said items. Recipient further covenants and agrees that Recipient shall execute, deliver and perform under any and all instruments, certifications or agreements and take such other acts as necessary, or desirable, to document, perfect, deliver and otherwise convey any assignment, transfer or conveyance contemplated hereunder, or to enable the Disclosing Entity to secure, assert, perfect, extend or maintain the full force and effect of any of its rights, including any intellectual property rights (patent, trademark, copyright) or trade secret rights in any matter which is included in the definition of Confidential Information.

3. Term.

The obligations of Recipient herein shall be effective during the period of three years (the "Non-Disclosure Period") from the later of the date the Disclosing Entity last discloses any Confidential Information to Recipient pursuant to this Agreement, or the last day on which Recipient performs any services for or on behalf of the Disclosing Entity. Further, the obligation not to disclose shall not be affected by bankruptcy, receivership, assignment, attachment or seizure procedures, whether initiated by or against Recipient, nor by the rejection of any agreement between the Disclosing Entity and Recipient, by a trustee of Recipient in bankruptcy, or by the Recipient as a debtor-in-possession or the equivalent of any of the foregoing under local law.

4. Other Information; Relief; Exemptions.

Recipient shall have no obligation under this Agreement with respect to Confidential Information which is or becomes publicly available without breach of this Agreement by Recipient, is

rightfully received by Recipient without obligations of confidentiality, or which Recipient can document that Recipient developed independently, without breach of this Agreement; provided, however, such Confidential Information shall not be disclosed until thirty (30) days after written notice of intent to disclose is given to the Disclosing Entity along with the asserted grounds for disclosure or documentation verifying its independent development.

5. No License.

Nothing contained herein shall be construed as granting or conferring any rights by license or otherwise in any Confidential Information. It is understood and agreed that neither party solicits any change in the organization, business practice, service or products of the other party, and that the disclosure of Confidential Information shall not be construed as evidencing any intent by a party to purchase any products or services of the other party nor as an encouragement to expend funds in development or research efforts. Recipient strictly agrees not to use any Confidential Information as a basis upon which to develop or have a third party develop a competing or similar product or service within the industries in which the Disclosing Entity operates or engages in commerce.

6. No Publicity. Recipient agrees not to disclose his, her or its participation in this undertaking, the existence of this Agreement or any of its terms and conditions, or the fact that discussions regarding any subject are being held with the Disclosing Entity on any matter, except as required by law or court order and in any event, with prior written notice to the Disclosing Entity unless impractical or impossible, in which event such notice shall be made as soon as possible.

7. Damages, Governing Law and Equitable Relief. This Agreement shall be governed and construed in accordance with the laws of the United States and the State of New York and Recipient consents to the exclusive jurisdiction of the state courts and U.S. federal courts located there for any dispute arising out of this Agreement. Recipient agrees that in the event of any breach or threatened breach by Recipient, the Disclosing Entity may obtain, in addition to any other legal remedies which may be available, such equitable relief as may be necessary to protect the Disclosing Entity against any such breach or threatened breach.

8. Final Agreement. This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

9. No Assignment. Recipient may not assign this Agreement or any interest herein without the Disclosing Entity's express prior written consent.

10. Severability. If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

11. Notices. Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, postage prepaid (United States mail) or a nationally-recognized overnight delivery service. If to the Disclosing Entity, notice goes to Blockchain Technologies Corporation, 55 Wall Street #708, New York NY 10007 (Attention: Nikolaos Spanos), or to Synapse Foundation % Blockchain Technologies Corporation. If to Recipient, notice goes to the address stated in clause (ii) of the introductory preamble to this Agreement.

12. No Implied Waiver. Either party's failure to insist in any one or more instances upon strict performance by the other party of any of the terms of this Agreement shall not be construed as a waiver of any continuing or subsequent failure to perform or delay in performance of any term hereof.

13. Headings. Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**Blockchain Technologies Corporation**                    **Synapse Foundation**


By:_____                    By: _____
Nikolaos Spanos, President                       Nikolaos Spanos, Member/Director

Date: _____                          Date:_____


Recipient (signing here and at the foot of each prior page)
_____

Print Name:   Kevin Hu
Address:

Date:___12/11/2018_____