# EXHIBIT U

NY_DOCS:615453.1 [99998.42025]

From: **Roger Benites** roger@blockchaincenter.com
Subject: Fwd: BLOCKCHAIN CENTER EUROPE - MEMEBERS' AGREEMENT
Date: June 23, 2020 at 11:59 AM America/Los_Angeles
To: **Eric Dixon** eric@blocktech.com, **Nick** nick@blocktech.com



Sent from my iPhone

Begin forwarded message:

> From: montini@rmavocats.fr
> Date: June 23, 2020 at 2:46:10 PM EDT
> To: roger@blockchaincenter.com, Nick Spanos <nick@blocktech.com>, eric@blocktech.com
> Cc: José Jumeaux <jj@riviera-services.fr>
> Subject: **BLOCKCHAIN CENTER EUROPE - MEMEBERS' AGREEMENT**
>
> Dear All,
>
> Please find attached the Members' Agreement doc with my marks up.
>
> I put on the paper the modifications that José and I would like to make to the Agreement; you can see that my observations are the same that I said in our last phone conversation.
>
> It's about the territory, the brands licensed, the payment details, the termination and the case of a dispute.
>
> I'm attentive to your eventual comments.
>
> Best
>
> **Renaud MONTINI**
> Avocat à la Cour
>
> 12, avenue de Wagram - 75008 PARIS
> T. 33(0)155731000  -  F. 33(0)155731011
>
> Ce message et ses pièces jointes éventuelles est confidentiel et peut contenir des informations protégées par le secret professionnel. Il est établi à l'intention exclusive de ses destinataires. Dans le cas où il ne vous serait pas destiné, nous vous remercions de bien vouloir nous en aviser immédiatement en appelant le +33 (0)1 55 73 10 00 ainsi que de détruire toute copie. Toute utilisation de ce message non conforme à sa destination, toute diffusion ou toute publication, totale ou partielle, est interdite, sauf autorisation expresse. L'internet ne permettant pas d'assurer l'intégrité de ce message, nous déclinons toute responsabilité au titre de ce message, s'il a été altéré, déformé ou falsifié.
> This message (and any potential attachments) is confidential and may also be privileged. It is intended solely for the addressees. If you are not the intended recipient please notify us immediately by calling +33 (0)1 55 73 10 00 and destroy all copies. Any unauthorized use or dissemination is prohibited. E-mails are exposed to the danger of alteration. We shall not be liable for this message if altered, changed or falsified.

**Attachments:**
image002.png (8.15 kB)
Cannes Blockchain Center - Members' Agreement_vRM 06.22.2020.docx (20.84 kB)

BTC009649

**Blockchain Center** ~~Cannes~~ Europe **Members' Agreement**

This Agreement dated as of this_____day of June 2020, is by and between Blockchain Center LLC, a Wyoming limited liability company ("BCLLC"), and Jose Jumeaux ("Jumeaux"), each a "Member" and collectively, the "Members" holding all the outstanding membership interests (the "Interests") of Blockchain Center Cannes LLC, a Société ~~à Responsabilité Limitée~~par Actions Simplifiée (~~Sàrl~~SAS) (the "Company") organized under the laws of the Republic of France.

1. **Organization.**
    (a) The parties hereby mutually agree to use their respective best efforts to organize the Company as a Société ~~à Responsabilité Limitée~~par Actions Simplifiée (~~Sàrl~~SAS) under the laws of the Republic of France with a principal place of business contemplated to be a retail, office or other working public space to be known as the "Blockchain Center" (the "Center") or Bitcoin Center in Cannes, France.
    (b) The parties further acknowledge and agree that a more definitive and comprehensive agreement, in accordance with the requirements of French law and corporate regulations, shall be based upon the terms and conditions of this agreement, and upon execution, will amend and restate this agreement.

2. **Ownership; Membership Interests; Governance.**
    (a) The Company shall initially have 10,000 Interests. Upon execution of this Agreement, BCLLC shall hold 2,000 Interests and Jumeaux shall hold 8,000 interests.
    (b) Both BCLLC and Jumeaux (collectively, the "Initial Members") mutually agree that no new Interests shall be issued, nor any existing Interests transferred, sold or pledged to any non-affiliate of an Initial Member, or any third party not related to an Initial Member, without the consent of each of the Initial Members.
    (c) Profits, dividends, distributions (including distributions made upon a dissolution, discontinuation or other termination event of the Company) and losses of the Company shall be divided among the Members in accordance with their respective ownership of Interests, except as provided in subsection (d) below.
    (d) If BCLLC shall at any time during the term of this Agreement own less than 20 percent of the then-outstanding Interests, BCLLC's license fee payable from the Company under Section 3 herein in any ~~calendar quarter or~~ financial year (such term, a "Payment Period") shall be adjusted upward so that the sum of (i) the license fee payable under this Agreement, and (ii) all distributions of profits, dividends, distributions and license fees during any such Payment Period, to BCLLC shall in the aggregate equal 20 percent of all amounts paid or distributed under Section 2(c) above.

3. **License to Company; Fees.**
    (a) The parties mutually acknowledge and agree that BCLLC shall grant to the Company a license to use the trademark for "Blockchain Center" and "Bitcoin Center" in commerce within the ~~Republic of France~~European Union countries (the "Territory") for a three-

year term, ~~extendable~~ automatically renewable for subsequent periods ~~by mutual agreement of the parties~~ unless notice of termination is given in writing by recorded delivery letter by either of the Parties at least six months before the date of expiry, in exchange for compensation consisting of license fees as provided in Section 3(b) below. In connection therewith, the parties mutually agree that the Company shall endeavor to apply for a copyright of the phrase "Blockchain Center" and "Bitcoin Center" from the ~~French national authorities~~EUIPO (European Union Intellectual Property Office) reasonably promptly upon the execution of this Agreement and ~~formation~~ registration of the Company as a Société ~~à Responsabilité Limitée~~par Actions Simplifiée (~~Sàrl~~SAS); provided, however, that the Company's obligations to remit the license fees payable to BCLLC under this Section 3 shall not be affected by any suspension, revocation or cancellation of any copyright or the denial, suspension, revocation or cancellation of any application for said copyright or other trade secrets rights.

(b) ~~The Company shall pay to BCLLC an initial license fee ("Initial License Fee") of US$25,000 upon execution of this Agreement.~~

(c) The Company shall pay to BCLLC a periodic license fee ("Periodic License Fee") equal to 20% of the ~~gross proceeds~~net profit realized by the Company in any ~~Payment Period~~fiscal year, within ~~30 days~~six months of the end of each fiscal year (Payment Period).

(d) Any failure to make payments not made when due hereunder at the end of any three-month ~~Payment Period~~fiscal year may be waived at the election of BCLLC if such failure is due to the inability of the Company to calculate the periodic license fee for said ~~three-month~~fiscal year Payment Period, provided that the delinquent Periodic License Fee shall be paid by the end of the subsequent ~~three-month~~fiscal year Payment Period.

4. **Further Undertakings; Business Generation.** The parties hereby mutually acknowledge and agree that BCLLC shall receive, reasonably promptly upon receipt, (i) as to business, transactions or revenue originating from, or received as a result of the efforts of, or introductions made by BCLLC or its principal, Nikolaos Spanos, or his or their respective affiliates (which affiliates exclude the Company), 67~~80~~% of said revenue, business, transactions, assets, interests, rights or fees (in whatever form) realized or received by the Company, and (ii) 20% of all other revenue.

5. **Events of Default and Termination.**

(a) BCLLC shall have the right to terminate this Agreement upon 6~~30~~ days' prior written notice to the Company or Jumeaux if any dividend, distribution, fee or other payment due hereunder is not timely made to BCLLC and such default or failure is not cured in full within 6~~30~~ days. Upon any such default and termination, the license granted hereunder shall immediately terminate without further action being necessary.

(b) ~~Notwithstanding any other provision of this Agreement, BCLLC shall have the right to revoke its license grant and terminate this Agreement upon 30 days' prior written notice to the Company, with or without cause, and such revocation shall relieve the Company of all obligations hereunder upon the later of the date 30 days after the date of such prior written notice, or the payment by the Company to BCLLC of all amounts due and owing under this Agreement.~~

6.     **Miscellaneous.** This Agreement shall be superseded by a written amendment or subsequent written agreement signed by all Members. This Agreement shall not modify the Operating Agreement except as specifically intended and authorized by all Members.

In the event of any conflict between any provision of this Agreement and the Operating Agreement the Operating Agreement shall prevail and control unless specifically provided for otherwise. All disputes arising under this Agreement shall be resolved ~~in reliance~~through arbitration: each of the parties will appoint its representative and the two chosen representatives will appoint the Arbitrator whose decision will be final by mutual agreement between the parties.~~upon New York law and adjudicated in the courts located in New York, NY~~.

IN WITNESS WHEREOF the parties hereto have hereby agreed to be bound as of this _____ day of ~~May~~June, 2020.

**BLOCKCHAIN CENTER ~~CANNES~~EUROPE ~~, LLC (Sarl~~SAS)**


By: _____
Jose Jumeaux

**BLOCKCHAIN CENTER, LLC**


By: _____
Nikolaos Spanos