# EXHIBIT A



The Empire State Building
350 Fifth Avenue, Suite 7710
New York, NY 10118

tel: 212-239-9669   fax: 212-239-9688
www.catafagofini.com

*Attorneys at Law*

September 18, 2020

**Via Email**

Alan Heller, Esq.
Foster Garvey PC
100 Wall Street, 20th Floor
New York, New York 10005
*Attorneys for Defendants*
Alan.heller@foster.com

Re:   *Blockchain Technologies Corporation v. RVH Inc., et al.*, 18-cv-9352 (AJN)(SN)
      Response to Defendants' Letter Dated August 17, 2020

Dear Mr. Heller:

As you are aware, we are newly substituted counsel for Plaintiff Blockchain Technologies Corporation and Third-Party Defendants Nick Spanos and The Synapse Foundation d/b/a Zap.org (collectively, the "Blockchain Parties"). We write in response to Defendants' August 17, 2020 letter raising various discovery issues. As you know, there are circumstances outside the control of the Blockchain Parties that made document production difficult. To begin, the COVID-19 pandemic forced the Blockchain Parties to spend considerable searching its at-home servers for relevant documents. In addition, as you know, Mr. Spanos' mother recently passed away, and the funeral services were held during the weekend of September 11 to 13. Nonetheless, as set forth below, the Blockchain Parties have substantially supplemented their production, and have addressed each issue raised in your letter.

### The Blockchain Parties Have Supplemented Their Document Production, Producing Several Hundred Pages Of Documents, Including Relevant Emails Using Over Four-Dozen Search Terms

First, Defendants identified that the Blockchain Parties had only produced some emails from a limited number of email addresses. After appearing as counsel of record, we discovered from you that the Blockchain Parties and the Defendants never met and conferred regarding email search terms. Immediately thereafter, we met and conferred on September 9, 2020, and agreed to 55 search terms to be used for producing responsive emails. We were surprised that this had not taken place already, but nonetheless thank you for your professionalism and cooperation. As a result of the parties' mutual cooperation, the Blockchain Parties substantially supplemented their

production utilizing the agreed-to 55 search terms to produce all available responsive emails, which bear bates numbers BTC002687 to BTC002707, and BTC002955 to BTC001057.[1]

Importantly, this supplemental production is responsive to a substantial amount of Defendants' Requests for Production. Specifically, the email production is responsive to Defendants' Requests Nos. 19, 29, 30, 32, 47, 63, 64, 67, 68, 69, 72, 87, 89, 91, 93, 95, 97, 99, 101, 103, 104, and 105, which all request documents relating or consisting of non-privileged communications between the parties and/or relevant non-parties to this action.

In addition, it is important to stress that individual Third-Party Defendant Nick Spanos does not use email very frequently because he suffers from sarcoidosis (which includes symptoms such as whole body fatigue, malaise, or night sweats, dryness, itchiness, or redness of the eyes, skin rashes or red and tender lumps, blurred vision or sensitivity to light), and uveitis which includes symptoms of eye redness, eye pain, light sensitivity, blurred vision, dark, floating spots in his field of vision (floaters), and decreased vision. Therefore, in light of Mr. Spanos' condition and in light of the substantial supplemental production submitted herewith, the Blockchain Parties, in good faith, have addressed any issues regarding email production in this action, to the best of their knowledge.

Second, with respect to documents relating to Third-Party Defendant Synapse Foundation/Zap.org, the Blockchain Parties have produced all available responsive emails. These documents are responsive to Request Nos. 9, 61, 67, 68, 70, 84, and 89. As set forth above, the Blockchain Parties utilized the agreed-to 55 email search terms which encompassed search terms that cover the Defendants' Document Requests. By way of example, the search terms included broad terms such as coin, coins, zap and synapse.

Third, with respect to the issues raised regarding intellectual property allegedly owned by Plaintiff, we respond as follows: to begin, documents regarding ownership of provisional patents are publicly available. Thus, the Defendants' reliance on a press release from five years ago in 2015 is misplaced. As part of the Blockchain Parties supplemental production, they produced (from the publicly available patent website) documents showing that the two patents at issue in your letter (U.S. Patent numbers 9,836,908 and 9,608,829) have not been owned by Plaintiff since 2018. These documents bear bates numbers BTC002536 to BTC002542. These documents are responsive to Defendants' Requests Nos. 51, 53, 54, 77 and 78. Further, the Blockchain Parties also included relevant publicly available documents from U.S. trademark office in their supplemental production. These documents bear bates numbers BTC002536 to BTC2686, and are responsive to Defendants' Requests Nos. 51, 77, and 78.

Fourth, with respect to bank statements and other financial records, it is important to note that Defendants are already in possession of Plaintiff's bank statements as well as copies of checks

---

[1] In your letter, Defendants take issue with the listing of the "bengal66@gmx.com" email address contained within a trademark application filed by Nick Spanos, claiming that this email address was used by Mr. Spanos. See Defendants' letter at Exhibit A. However, that contention is untrue. The bengal66@gmx.com email address does not belong to Mr. Spanos, or to any employee of an entity relevant to this action. The email address belongs to an individual that was engaging in freelance paralegal work at the time the application was submitted three years ago in 2017, and thus the Blockchain Parties do not have access to that email address.

received via third-party subpoenas served upon Certified Public Accountant Alan Fruchter, Metropolitan Commercial Bank, Signature Bank, and TD Bank.  These documents are also part of the Blockchain Parties supplemental production bearing bates numbers BTC002068 to BTC002535.  Additionally, we learned that, as recently as September 10th, 2020, the Defendants received a large number of documents from Santander Bank.  These documents are responsive to Defendants' Requests Nos. 1 and 27, which requested bank statements and other financial records from the Blockchain Parties.[2]

Moreover, addressing the Defendants' claim of lack of production of certain nonparty entities, the Blockchain Parties are also producing herein, as part of their supplemental production, dozens of documents regarding the following entities: Slidechain LLC, Digital Assets Vending, Inc., Cryptos, Overseas BC Marketing, and Blockchain Apparatus.  These documents bear bates numbers BTC002708 to BTC002954.  Therefore, the Blockchain Parties have fully addressed issues regarding the production of financial records.

Fifth, Defendants claim that Plaintiff only produced one document regarding the Plaintiff's expenditures is incorrect.  In Plaintiff's initial production, Plaintiff produced hundreds of documents showing Plaintiff's expenditures, which included copies of checks and invoices regarding certain work performed for the benefit of Plaintiff, and those documents bear bates numbers BTC000595 to BTC001127.  In addition to these records, as set forth above, Defendants received bank statements, as well as copies of checks via third-party subpoenas.

Sixth, the Blockchain Parties will be submitting along with its supplemental production, a privilege log describing the categories of documents that the Blockchain Parties are asserting as privileged under the attorney-client privilege.  For each range of emails organized by date, the privilege log describes the sender/recipient(s), the description of the communication and the justification of the privilege (either attorney-client or attorney work product).

Seventh, Defendants' claim about the "partial" production of a document entitled "Agreement and Plan of Merger dated May 19, 2015" is untrue.  While Defendants take issue with the apparent missing Company Disclosure Schedule, the fact remains that the Blockchain Parties have produced the only copy of the document that is in their possession.

In sum, the Blockchain Parties have substantially supplemented their document production to address all issues raised in Defendants' August 17, 2020 letter.  We thank you for your cooperation, and professional courtesy.

Sincerely,

*Jacques Catafago*

Jacques Catafago, Esq.

---

[2] With respect to financial records relating to the Bitcoin Center and its use/occupancy at 40 Broad Street, as you are aware from the Blockchain Parties initial production, the company was evicted and the Blockchain Parties have confirmed that they have no additional responsive, non-privileged documents in their possession, custody or control.